# Hiram Kauffman *vs.* Emily J. Walker.

A trustee's advertisement of the sale of a house and lot in the city of Baltimore, described the property as situated on "the south side of Lombard street, at the distance of 391 feet, or thereabouts, from the south-west corner or intersection of Lombard and Canal streets, fronting on Lombard street about 24 feet, and extending back about 100 feet, to the midway between Lombard and Granby streets, and is improved by a good and substantial three-story brick dwelling-house, with a brick back-building." Held :

That this was an insufficient description of the property, and, in connection with the fact that it sold for much less than its value, will avoid the sale.

The advertisement is designed not only to let the public know what property is thus brought into market, but also to afford the owner an opportunity to redeem it from sale, or to prevent its being sacrificed.

Judicial sales will not be set aside for causes that the parties in interest might, with reasonable diligence, have obviated; every intendment will be made to support them.

But where the court can see that injustice will be inflicted, by the ratification of a sale, upon a party not in default by reason of the carelessness or omission of the trustee, the sale should not be ratified.

In such sales the court acts for all parties, through its officer, the trustee, and all parties look to the court for protection against the consequences of his acts or omissions.

A party claiming under the mortgagor is not entitled to *notice* of the proceedings, to obtain a decree, either under the act of 1833, ch. 181, or its supplement of 1839, ch. 9.

Appeal from the Superior Court of Baltimore city.

A mortgage, under the act of 1833, ch. 181, of certain property in the city of Baltimore, was executed to the appellee, on the 22nd of April 1845, by Wm. H. and Wm. E. Hanson and wife, to secure a debt of $1000. On the 11th of March 1853, after forfeiture, the mortgagee filed her petition in the

Superior Court for a decree for a sale under this act. This petition states the death of Wm. H. Hanson, and that the appellant had, by *mesne* assignments, become sole owner of the property, subject to the mortgage. On the same day she filed a statement of her claim, amounting to $1247.67, to which was annexed this affidavit:

"STATE OF MARYLAND, *City of Baltimore, to wit:*

On this 9th day of March 1853, before me, the subscriber, one of the justices of the peace of the State of Maryland, in and for the city of Baltimore aforesaid, *personall*, Emily J. Walker, and made oath according to law that the above account is just and true as stated, and that she has not received any part of the money stated to be due, or any security or satisfaction therefor, more than the credit is therein given for, and the mortgage and note herewith filed.

SAMUEL RINGGOLD."

The court, on the same day, passed a decree (under the act of 1833, ch. 181, as stated in the titling,) for a sale, "unless the mortgage debt, with interest and costs, be paid to the complainant within five days from this date." The trustee advertised the property thus:

" *Trustee's Sale.*—By virtue of a decree of the Superior Court of Baltimore city, sitting as a court of equity, the undersigned, as trustee, will offer for sale at public auction, on the premises, on Thursday, the 14th day of April next, at half-past 3 o'clock P. M., the following property, viz: All that lot or parcel of ground, with the improvements thereon, situate on the south side of Lombard street, in the city of Baltimore, at the distance of three hundred and ninety-one feet, or thereabouts, westerly from the south-west corner or intersection of Lombard and Canal streets, fronting on Lombard street about twenty-four feet, and extending back about one hundred feet to the midway between Lombard and Granby streets. The above lot is in fee, and is improved on Lombard street by a good and substantial three-story brick dwelling-house, with a brick back-building. Terms of sale," &c. This description of the property is similar to that in the mortgage.

The property was sold in pursuance of this advertisement to

Louis Wagner, for $1550, and the sale duly reported by the trustee. The appellant excepted to the ratification, because:

1st. No notice was given to him as provided by the decree.

2nd. The affidavit annexed to the claim of the mortgagee is not in due form of law, as contemplated by the act of 1833, ch. 181.

3rd. The sale is for less than half the value of the property.

4th. The decree and sale have been obtained by surprise, and without notice to the exceptant, who was ready and willing to pay the mortgage debt, or so much of it as was justly due.

5th. The sale was collusive between the purchaser and the agent of the complainant, and for the purpose of depriving the exceptant, the owner of the property, of his just and equitable right.

6th. And for other good and sufficient reasons.

An additional objection was afterwards filed: That the petition prays for relief under the act of 1833, ch. 181, and the decree was under the same act, and that the court, under this act, had no authority so to decree.

The purchaser and complainant in their answers aver that the sale was *bona fide* and fairly made, and insist that it should be ratified. The appellant then filed in court a written offer to give bond, with sureties to be approved by the court, in any sum the court may require, that the property, if fairly exposed at public sale at the Exchange, after due notice and proper description in the advertisement, will sell for more than double the sum obtained at the sale made by the trustee.

Testimony for and against the exceptions was taken, by consent, before a special commissioner appointed for the purpose.

*As to the value of the property,* the witnesses on the part of the exceptant state that, in their opinion, it was worth $3000 or more; that the lot was worth about $3.50 per front foot, and the house about $2000. Those on the other side state that the house was old, out of repair and dilapidated; that the location is not desirable, and the character of the neighborhood would not recommend the property; that land in that neighborhood is worth $2 per foot; one of the witnesses states that he thinks $1500 was a fair price for the property, whilst another says he thinks the property sold very low.

Kauffman *vs.* Walker.

*As to the advertisement,* one of the witnesses for the exceptant, who had owned the property for nearly ten years, says he saw the advertisement before the sale and did not recognise the property, and that he would not now recognise it by reading the advertisement, because he does not know the distance of the property from Canal street; another states he would not recognise it as Hanson's old house for the same reason; other witnesses state the same thing, and one states that he would recognise it, because he is acquainted with the distances in that location. These witnesses also proved the house was in possession of the purchaser as tenant; that it had formerly been occupied for a long time by Hanson; that there was an old number on the house nearly obliterated; and that there are several three-story brick houses on Lombard, between Canal and Lloyd streets; that this house was at the corner of Lombard and Lloyd streets when the latter should be opened, and that if Lloyd street should be continued southerly it would give the lot one hundred feet front thereon; that there was a three feet alley on the east side of the premises used with the property, and that to settle a doubt in regard to it, one of the former owners paid a sum of money for it to the claimant. On the other side, one witness says he thinks he would recognise the property from the advertisement, by its distance from Canal street and the size of the house, and another states that he read the advertisement and went to the sale in consequence of seeing it.

*As to the sale,* it was proved that the attendance was small—not more than ten or twelve persons; that it rained before and after, but very little during the sale; that there were four bidders; that it was conducted in the usual mode; that the trustee was present and did every thing he could to sell the property well; that Kauffman was not present, either in person or by agent.

There is proof that Kauffman knew of the mortgage and the amount due on it; that he employed counsel to contest its validity before the petition for the decree was filed; that such counsel wrote a note to the agent of the mortgagee in reference to the matter, stating that Kauffman was dissatisfied with the

mortgage, and asking who was its owner, and for a statement of the mortgage claim, and he remained expecting a reply, but heard nothing from such agent or his counsel until several days after the sale had been made, and that the proceedings and the sale were a surprise to him, he being on friendly terms with said agent, did not think proceedings would be instituted and a sale made without notifying him as counsel for Kauffman.

The court, (FRICK, J.,) delivered the following opinion in the case:

"The act of 1833, ch. 181, under which this proceeding is taken in equity, bears analogy to the entering a judgment at common law upon terms. Consent is given by the mortgagor to enter up a decree against him at any time, with liberty to enforce the payment by a sale, when by a statement, verified as the act directs, it is shown by the mortgagee that the claim or any part of it has matured, and still remains due and unsatisfied. This is all the preliminary proceeding and condition that is required to effect the sale. No other or further notice is contemplated by the act, and no particular form of verification is required. In this case the affidavit filed appears to me a substantial and sufficient compliance. As to any further notice to the mortgagor or his assignees, or in fact of any notice at all to any party, the act is entirely silent. Payment at the time limited is the only means of averting the consequences of the debtor's own assent and appointment of the time of payment.

"The day further given, in analogy to the general chancery practice, is, therefore, only a stay of execution of the decree as further grace and time to the mortgagor, of which, he (being presumed to know when the debt in the first instance is due,) has no right to claim notice, at least not under the act, to which, stringent and grinding as it is, he has submitted himself by the terms of his contract. Harsh and summary as the whole proceeding often is, yet the mortgagor has by his own assent subjected himself to it, and his *assignee* with notice of the mortgage on record can stand in no better position. The court can extend no equity or notice to him which is cut off from his assignor by the terms of the contract. The proceeding is substantially *ex-parte* on the part of the mortgagee.

Kauffman *vs.* Walker.

The act nowhere, in any form, requires notice to any other party, and the creditor is only to see that he keeps strictly within the requirements of the act.   If no notice, by the act, is required of him to the mortgagor or his assignee, then the objection of surprise (which here is want of notice) can be of no avail.   The purchaser of the equity of redemption stands in the place of the original mortgagor, who has waived all notice to which he would be entitled under any other chancery proceeding.

"No other objection is therefore left upon the exceptions but the inadequacy of the price.   However manifest it may be from the testimony on this head taken altogether, that the property has not sold for its actual value, and that the proceeding was somewhat precipitated, and out of the view of some of the parties most interested, I dare not pronounce it so grossly inadequate as to authorise me, standing alone on that objection, to set aside the sale.

"I consider these and similar proceedings as properly under the act of 1833, ch. 181, and that the supplement of 1839, ch. 9, sec. 3, is to be construed as part of the act, the proceeding authorised by that third section having direct reference in its execution to the original act.   The proceeding is necessarily, in the first instance, under the act of 1833, and the latter supplement in reference to the proceedings after the period limited. for the payment of the debt, still directs the decree to be passed under this act, the phraseology being, 'That the *decree authorised by*' the 2nd section of the act of 1833 may be passed as well before as after.

"In overruling the exceptions, I can only regret that these proceedings must be entertained in a court of chancery under an act of Assembly which, on its face, repudiates all equity principles."

From the order overruling the exceptions, and finally ratifying the sale passed in conformity with this opinion, the exceptant appealed.

The cause was argued before Le Grand, C. J., Tuck and Mason, J.

*Benj. C. Barroll* and *Alex. B. Hagner* for the appellant, argued :

1st. That the acts of 1833, ch. 181, and 1839, ch. 9, are *penal* statutes, and, as such, ought to receive a *strict* construction: no sale should be made under their provisions except in conformity to their express terms. *Dwarris on Statutes*, 729, 743, 748, 750, 751, 754, 768. *Md. Digest*, 84, *title Attachment.*

2nd. That Kauffman was entitled to *notice* of the petition, which was filed *after* the mortgage debt was due under the act of 1839, ch. 9, sec. 3. In this particular it differs from the cases of *Ing vs. Cromwell*, 4 *Md. Rep.*, 31, and *Williams vs. Williams*, 7 *Gill*, 302, which were under the act of 1833, ch. 181, and the petitions were filed *before* the mortgage debt was due. The act of 1833 authorises the passing of a decree *before* the mortgage is due, and *expressly* says it may pass *without notice.* The act of 1839 says a decree may pass *after* the mortgage is due, but *does not* say that no notice is *necessary.* Unless the court see distinctly that notice is dispensed with under a *strict* construction of the act of 1839, they will not ignore the general rule of equity proceedings relating to defendants. The act of 1833 authorised the decree without notice, because the mortgagor knew when he signed the mortgage exactly at what time the decree would order the sale to be made, but this reason does not apply in cases under the act of 1839, and in this case Kauffman bought *after* the mortgage was due, and could not possibly know when the sale was to take place. The reason of the law therefore ceases, and *"cessante ratione cessat lex."* But again, the *decree* contemplated notice to Kauffman before the sale should be made, otherwise the provision allowing five days for the payment of the mortgage debt was useless. This court will not so construe a solemn decree as to reject so important a part of it as unmeaning. If this was a proceeding under the act of 1785, ch. 72, the decree would be reversed, unless it gave a day to bring in the money, although the defendant may have been contesting the case for years. How much more important is it that the day should be given to the defendant in a case like the

present? And if it is so important the day should be given, he certainly should have notice of it, in order to avail himself of it.

3rd. That the *affidavit* annexed to the claim is defective in many particulars:—1st. It was *made* and filed *prior* to the decree, whereas the act of 1833 requires it to be *made* as well as filed before the *sale*, and *after* the arrival of the *period limited by the decree for the sale.* 7 *Gill,* 304, *Williams vs. Williams.* 2nd. The statement was filed on the 11th of March 1853, and only pretends to show the amount due on the 7th of March, whereas it should have shown the amount *"remaining due"* at the time it was filed. 3rd. The account inserts charges for *taxes,* whereas no such right of *tacking* to the mortgage is allowed by the acts of Assembly. 5 *Md. Rep.,* 195, *Joynes vs. Wartman.* 4th. The affidavit does not show that the affiant *appeared* in person before the magistrate, whereas it should show *upon its face* that the requirements of the law have been fully complied with. 8 *Md. Rep.,* 25, *Warner vs. Fowler.* 5th. It asserts that the mortgagee made oath *"according to law."* This is improper; it should say *how* the oath was made, whether on the Bible or otherwise, as authorised by the constitution. 2 *H. & McH.,* 377, *Evans vs. Bonner.* It must always appear *on the face of the affidavit* which of the modes the *affiant adopted.* 6th. Again, if the court hold that the proceedings in this case do not embrace the act of 1839, because the petition prays relief specially under the act of 1833, then the affidavit is defective and void, because made before a *justice of the peace.* As additional authorities on these objections, see 5 *Md. Rep.,* 99, *Hays vs. Dorsey. Ibid.,* 161, *Gatchell vs. Presstman. Dwarris on Statutes,* 749. 1 *H. & J.,* 136, *Smoot vs. Bunbury. Ibid.,* 567, *Dyson vs. West.*

4th. That the property sold for an inadequate price. The law on this point we understand to be this; if the sale be in all respects regular, the court will not set it aside for inadequacy of price unless it be *gross.* But if there be other material irregularities accompanying the sale, then *mere* inadequacy will weigh with the court as an *auxiliary* argument inducing it to set the sale aside. 11 *G. & J.,* 1, *Glenn vs. Clapp.*

6 *Gill*, 236, *Cohen vs. Wagner.* 7 *Do.*, 269, *Johnson vs. Dorsey*. Now we contend, 1st, that the proof here shows *gross* inadequacy of price. There cannot be the slightest doubt upon the evidence that the property did not bring half its value, and the offer of the appellant to *insure* double what it sold for, in case it be fairly brought into market, will have weight in determining this question, as it certifies the court that the mortgagee's interest will not be prejudiced by a resale. But, 2nd. The price was certainly inadequate, and this should cause the sale to be set aside when considered in connection with these irregularities, viz :—1st. The *defective advertisement*, not describing the property by the *number of the house;* not mentioning its being at the corner of Lloyd street; not mentioning the alley; not describing it so as to be recognised even by those who once owned it. ( 8 *Gill*, 260, *Alexander vs. Walter*.) In a large and compactly built city, to describe a lot as situate "three hundred and ninety-one feet, or thereabout," from any given point, is absurd, if the object be to give notice to the community of the specific property intended to be sold. It would almost have required a surveyor with his measuring rods to have found the property. Kauffman himself did not know of the sale until it was over. That the further opening of Lloyd street south of Lombard would give this lot one hundred feet front on the former street, is a fact so important to a judicious and proper sale, that no advertisement ought to omit to mention of it. 2nd. The small number of bidders present. 3rd. The inclement weather while the sale was proceeding in the open street.

5th. That the proceedings including the decree, and the sale under it, were a *surprise* upon Kauffman, the owner of the equity of redemption.

*Charles F. Mayer* for the appellee.

If essential, it might be contended that the act of 1833 is a remedial law, and not to be so strictly construed as to require more than a *substantial* conformity to provisions preliminary to a decree and sale. There is nothing in the act that derogates from equity the *assent* of the mortgagor to the decree

being regarded as equivalent to a *subpœna* and answer. (7 *Gill*, 304, *Williams vs. Williams.*) The Supreme Court, in 4 *Wheat.*, 235, *Bank of Columbia vs. Okely*, and 2 *Pet.*, 671, *Bank of Columbia vs. Sweeney*, has, to a like assent to a special common law procedure, assigned the same virtue and merit. But we need not take this position to overcome the objections here interposed.

1st. As to the *form* of the affidavit: *No particular form of affidavit* is prescribed by the act. The statement of claim is required generally to be "verified by affidavit." Is not that done here even without the word "*appears?*" Omitting that word the affidavit puts the affiant "*before*" the justice, and she is there certified to have sworn to the truth of her account. It is to be read as if it had stated, "*Before me*, Emily J. Walker makes oath," &c. Can any one obliterating the unmeaning word "*personal*" read the affidavit to any other effect?

2nd. As to the *time* the affidavit was made: It was made *before the sale*, which is all that the act enjoins. It is only necessary that the court should have the *act of selling* justified by the precedent oath of the claimant, and that is here fulfilled. If between the affidavit and sale the debt is paid, the party may prevent ratification by alleging and proving payment. *There is nothing conclusive, therefore, in this affidavit*, and hence no particular time for making it is limited, only that it be *before the sale*. But if there is any weight in this objection, we insist, that not being one of the exceptions, it was waived, and cannot therefore prevent a ratification. 4 *G. & J.*, 479, *Brown vs. Wallace.* 5 *Md. Rep.*, 161, *Gatchell vs. Presstman.*

3rd. As to *notice:* The act of 1839 is not only, on general principles, a part of the act of 1833, and, like all supplements, has its *only* operation as if embodied in the original act, but the decree referred to in the supplement is, by the supplement's very words, *the decree* which the act of 1833 allows or institutes. Why should notice be requisite for a decree that the supplement points to, which is put in *pari ratione* with the decree of the original act, when the decree limited by that act does not require notice? This court has decided over and over again, that in order to a valid decree under this system notice is not necessary. 5 *Md. Rep.*, 99, *Hays vs. Dorsey.*

4th. If notice of the decree was not necessary there could, in law, be no *surprise* inflicted upon Kauffman. By the cases cited on the other side, it will be seen that the court esteems that the parties interested *are duly notified* of the requirement to pay the debt, and are fully guarded in their rights by their knowledge of the time fixed by the mortgage for paying the claim, and by the warning, that in default of payment a decree may pass for a sale.

5th. As to the *inadequacy of price:* Is this alleged inadequacy made *at all* apparent, or at least is it *so gross* as to raise the inference of fraud or gross remissness in the trustee? (11 *G. & J.*, 1, *Glenn vs. Clapp.*) In *Cohen vs. Wagner,* 6 *Gill,* 236, and *Johnson vs. Dorsey,* 7 *Gill,* 269, the disproportion between the sales and the estimated values of the property was quite as great as the extreme estimate here would create, and yet *there* it did *not* create the inference of fraud or faultiness. But a fair view of the evidence will, as we insist, show that there was no such inadequacy as insisted upon by the other side.

6th. But to help out this inadequacy fault is found with the advertisement as wanting in due identification of the property. We may here urge that this alleged defect is not made a subject of exception, and the objection is therefore not to be entertained. But what is there in the objection? The location of the property is defined by the street on which it binds, by the front it occupies, by the distance it is from another street, by the improvements that are on it. What better designation could be given? It is just *that* particularity of description and identification which, in 8 *Gill,* 261, is stated, would have sufficed to make a tax-sale valid so far as the point of description in the advertisement was concerned. The advertisement *practically* proved itself sufficient, for a number of persons *were, in fact, instructed by it,* were to attend to bid for the property. And any one *looking toward purchases in that quarter of the city,* would readily be informed of the actual property to be sold, by taking into view the distance from Canal street and the size of the house connected with the property. All was done that reasonably could have been

effected to designate the property; for it appears the house had *not a number* that could be discerned and that could have served to identify it.   Where is any witness adduced by the appellant who says he would have attended the sale, if the advertisement had announced by local references what was to be sold?   I throw out of the case the appellant's offer to insure, on a resale, a larger bid.   Under our decisions biddings at judicial sales are not to be opened upon such offers.

Tuck, J., delivered the opinion of this court.

Judicial sales will not be set aside for causes that the parties in interest might, with a reasonable degree of diligence, have obviated.   Every intendment will be made to support them. But where the court can see that injustice will be inflicted by the ratification of a sale upon a party not in default, by reason of the carelessness or omission of its own officer, it should interfere to prevent it.

Several objections have been made to this sale, but we think it necessary to advert only to two, the others being insufficient. We are satisfied that the property was sold for much less than its value, if the opinions of the witnesses are to be relied on. And this result was probably caused by the imperfect manner in which the property was described in the notice of sale. The advertisement is designed not only to let the public know what property is thus brought into market, but also to afford the owner an opportunity to redeem it from sale, or to prevent its being sacrificed.   *Alexander vs. Walter*, 8 *Gill*, 260.   Some of the witnesses say, and among them one who had owned this property for ten years, that they would not have known, from this notice, what property was to be sold, unless they had known the number of feet from Canal street.   City property is often described in this way, but a more particular description should be given, if the property be susceptible of it, as we think this was.   Without intending to intimate any such purpose in the present case, for there is no evidence of the fact, it appears to us that if the purchaser, or others, had colluded with the trustee to make the property sell for less than its value, by keeping the owner in ignorance of the sale, they

heed have resorted to no form of notice, if he advertised at all, better calculated to produce that result, than the one under which this house and lot were sold. It is to prevent the possibility of injustice from such causes that notice of the sale is required, and that includes a description of the property, by which the owners and the public may be informed. If Kauffman had had notice of this decree, he might, if the advertisement had fallen under his eye, have conjectured what property the trustee proposed to sell. The knowledge of one fact might have put him on inquiry as to the other. But the proceeding was *ex parte;* he does not appear to have known even that the petition had been filed. To be sure, he was not entitled to notice in fact of these proceedings, but, in the absence of it, no inference of knowledge of the sale should be drawn, from this advertisement, to his prejudice. The court acts for all the parties, through its officer the trustee, and to it they look for protection against the consequences of his acts or omissions. We do not think it can be averred that the trustee did all that was reasonably required of him, in order to bring this property fairly into the market. This error on his part, and the inadequacy of price, are reasons for vacating the sale, though the latter objection alone, under the decisions of this court, might not, probably, be sufficient. *Glenn vs. Clapp,* 11 *G. & J.,* 1. *Cohen vs. Wagner,* 6 *Gill,* 251. *Johnson vs. Dorsey,* 7 *Gill,* 269.

The purchaser has an interest in maintaining the sale, but, as he buys subject to ratification by the court, he takes the risk of losing his bargain if it should turn out that sufficient objections exist to its final confirmation.

*Order reversed and cause remanded.*

This case was argued and decided at December term 1855, and during that term a motion was made for a re-argument, upon the ground that the decision that the advertisement was defective in its description of the property, would have the effect to disturb many titles. In support of this motion many advertisements, describing property in a similar mode, were filed. This motion was argued by *Mayer & Alexander* for

the motion, and by *Barroll & Hagner contra*, and was *overruled* by the court at the present term.