Burhans *v.* Beam.

---

JOHN BURHANS, appellant,

*v.*

JOHN R. BEAM et al., respondents.

1. In a partition suit where lands are sold, and a minor has an undivided interest, an agreement between buyers who bid at the sale that their purchases should be reported by the commissioners in the name of a person to whom no land was struck off, will not bar the infant heir from a right in equity to recover from the original purchasers the full amount of the consideration-money expressed in the deed executed to the substituted grantee, who paid a part by his bond secured by mortgage.

2. In this case such grantee delivered a declaration to said buyers, stating that he held title for himself and them, in trust, to sell the lands and divide the profits *pro rata*, but making no covenants as to losses.—*Held*, that a scheme of this nature could not exempt the defendants connected therewith, and who were familiar with the entire transaction, from an equitable liability to the minor heir for any deficiency in the proceeds of the sale of the mortgaged premises to pay the full amount due upon the bond, in the absence of an express release on arriving at legal maturity.

---

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Burhans* v. *Beam, 9 Stew. Eq. 497.*

Burhans v. Beam.

*Mr. Eugene Stevenson,* for appellant.

*Mr. John W. Griggs,* for respondent.

The opinion of the court was delivered by

PATERSON, J.

The single question involved in this appeal is whether any person other than the obligor of a bond is liable to pay any money that may remain due thereon after a sale of the premises described in the mortgage by which the obligation was secured. It is necessary only to state the facts disclosed by the testimony that bear directly upon the matter in controversy.

From these it appears that the complainant held an interest in lands in the city of Paterson, which were sold ten years ago by commissioners, under proceedings in partition in the orphans court of the county of Passaic. He was a minor at the time, and his guardian received, on his account, a certain sum of money and this bond and mortgage as coming to him from such sale. On his attaining full age, his guardian, to whom transfer had been made, assigned these securities to him. The obligor and mortgagor, the defendant John R. Beam, took a deed from the commissioners in his individual name, but under an agreement with his co-defendants, John J. Brown, John H. Hindle and Thomas D. Hoxie, by which they became interested equally with him in the transaction. The conditions of this agreement were expressed in a declaration of trust of even date with the deed to John R. Beam, and executed by the latter to his co-defendants aforesaid, each of whom admits contributing a proportionate share of the consideration-money paid by Beam to the commissioners, and also of interest for more than two years upon the securities. It is manifest, then, that the defendants above named intended to be participators in the scheme in equal shares. Whether they have become bound in equity by their acts in the premises is to be determined here. Mr. Brown, Mr. Hindle and Mr. Hoxie claim and insist that if the venture was profitable

they were to share with Mr. Beam whatever might be realized over the expenses, but were not to be responsible for any deficiency or loss. The decision below sustains them in respect to the latter position. The complainant considers this arrangement to be a mere subterfuge, the result of a combination to avoid liability, a one-sided agreement, the written words of which bear a marked resemblance to the oral language whereby the pale-faced hunter proposed to his Indian comrade to divide the contents of the bag of game. Mr. Beam does not admit or deny the assertion of these three co-defendants in their answers and testimony respectively. It is clear, also, that Brown, Hindle and Hoxie attended the sale and bought, or intended to buy. The agreement expressed in the declaration of trust, and accepted by the commissioners, was substituted for the bids of purchase made at the auction sales by David B. Beam, Brown, Hindle and Hoxie, and the commissioners reported a cash sale.

Upon the face of the facts thus developed, it is evident that if the purchases of Brown, Hindle and Hoxie had been completed in the original form, the liability of each would have been unquestioned. Hindle, in his answer under oath, affirms "that the transaction, so far as this defendant was concerned, was a mere speculation." He deposes that when Hoxie wished him to go into the scheme as a good thing for speculation, he refused at first, "because I told him the property I had bought, so far from being a speculation, I had paid for; and what I did own I wanted to own;" and "I was not going to give my bond and mortgage when I had money to pay for what I bought." But when he was told "they were going to put this property they had bought into a trustee's hands and sell it, and that I would not be liable at all, on those grounds I put my five lots in." The declarations of Mr. Hindle in his answer and deposition, differ on the point whether his interest in the purchase was, or was not, a matter of speculation. It may be that he did regard the scheme as being of a different character from his original purchase. Mr. Hoxie, in his answer, admits bidding and buying at the auction sale, and insists more than once that the scheme did not contemplate even the shadow of an agreement by

which he was to be responsible outside of the mortgage. He admits, like Mr. Brown and Mr. Hindle, to have paid his share of interest so long as that was kept up. He died during the pendency of the cause. It is established by the evidence that each of these three defendants had full personal knowledge of all the circumstances preceding the transaction contained in the declaration of trust, and cannot plead ignorance or innocence in that respect. Will an arrangement of this nature enable them to avoid in equity a liability they could not have escaped in law, provided there had been no intervention of a trustee, and each had paid and secured his purchase in manner analogous to Mr. Beam ?

Consider fully the facts disclosed in the history of this transaction. Here was a sale in partition, attended by the three defendants, Brown, Hindle and Hoxie. Each intended to become a purchaser. One acted as auctioneer, and struck off lots to himself; whether a fraud in contemplation of law or not, is of no particular consequence. When he thus bought he says it was not as a matter of speculation, and he proposed to pay. Afterward he was persuaded to pool or put his lots in a venture by which he would not become liable at all. This was the inducement under which he joined in the scheme, and converted his original *bona fide* purchase into what his answer calls a mere speculation. Another, the defendant Hoxie, who held out this inducement to Hindle, also was a bidder, and says the scheme was designed to protect the parties from incurring any loss beyond the mortgage, while profits, if any should be realized, were to be divided. The third had made arrangements to buy through the principal promoter of the scheme, and agrees with the others in saying the three were to share in any gain. According to the concurrent declarations of these defendants, the plan was that John R. Beam was to sustain all loss, but was to give them three-quarter part of the profits. This complainant was a minor heir, who could not act for himself, could do nothing, consent to nothing, waive nothing. The commissioners were trustees, the duties of whom were prescribed by statute. Not having followed the directions of that statute, they had become liable, certainly

to a minor owner if not to others in interest, by reporting a sale as made for cash, when the greater part of the consideration was secured by mortgage, and a deed was executed to one who was not a bidder, directly or indirectly, at the sale. No conditions of purchase were signed, and no transfer of bids appears on the record or the face of the deed. About these facts there is no dispute, and the respondents place their defence fairly and squarely upon the express ground that a liability on the part of others than Beam, beyond the money invested, is excluded carefully and designedly. Answers, depositions and the declaration of trust all tell substantially the same unvarying story—that the scheme contemplated an avoidance of responsibility for loss on the part of these three answering defendants, while reserving a share of profit proportioned to their interest. This court now is asked, with the connection of these defendants plainly visible throughout the transaction from beginning to end, to confirm and establish, as against an infant, an agreement of the nature disclosed in this case. That, in their judgment, cannot be done unless the broad equity arising from the facts in favor of the complainant can be overthrown by the considerations urged on behalf of the defendants. These will be examined briefly.

Two insistments, principally, are relied on for this purpose. One is that the complainant, as assignee, takes no more rights and acquires no more remedies than the commissioners possessed. The argument is, that as the latter could have no recourse on the answering defendants, the assignment could convey nothing better than the commissioners could claim. But who is the complainant, and under what circumstances did he become assignee of the bond and mortgage? How does it appear that he was a party in the agreement, or could be concluded by the acts of the commissioners and the declaration of trust? Of what consequence to him are the intentions of the parties as manifested by deeds or declarations, or any other writings by which he could not be bound? He was incapacitated, legally, from acting in the premises. His guardian was ignorant of the real nature of the transaction for four months succeeding its close. The commissioners did not consult the guardian or heirs

who were of age, but regulated the business themselves.. Charles Burhans testifies directly to this, and supposed, until the settlement in November, 1873, that they were to have the securities of those to whom he heard lots struck off at the sales. He objected, at the settlement, to the bond and mortgage of John R. Beam, saying, "Beam did not bid or buy at the sale." Under such circumstances, how can it be said, in justice or equity, that the complainant had no more right in the matter than the commissioners, who had acted illegally and so become responsible?

The other insistment is, that no new liability is created by the assignment. None is claimed. That existed before and at the time the transfer was made to the guardian. The equity was complete in the heir as soon as the deed and mortgage were exchanged. That assignment did not affect his right in any way, the right remaining the same with or without the mere formality of transfer. There is nothing in either of these insistments.

This disposes also of the suggestion of acceptance or waiver on the part of the guardian by taking or receiving the securities in question. In the first place, that could not conclude the infant; and, secondly, she was not consulted until after the sale. No knowledge prior to, or at, or until four months after that, is brought home to her. On no principle of equity can the mere assignment to the guardian operate as an estoppel, or deprive the complainant of his remedy against the commissioners or these three defendants. Only an express release from him on attaining full age could be effectual for such a purpose. The testimony shows that the heirs or representatives expected to receive the obligations of those who bid off lots at the sale, and not of one who was no purchaser then. There is no evidence manifesting that either the guardian or the complainant took the securities for more than they were worth, and that is all the mere transfer to the latter did, without evidence that he accepted the assignment in full satisfaction of his claim.

The cases cited in the opinion from the New Jersey reports in relation to rights arising or liabilities created by an assignment of the bond and mortgage, do not seem applicable to the circumstances of this case under the view taken. Those authorities simply cover

Burhans v. Beam.

transfers of such securities between individuals. The analogy would fail here in several essential particulars, and, besides, no one claims new rights under the assignment; the equities existed when that was executed, and remained unchanged.

The conclusion is, that the defendants, Brown, Hindle and Hoxie, were purchasers at the sale, and designed to become liable for the full amount of their bids. Afterwards, they combined in a scheme to which they contributed capital *pro rata.* They paid interest thereon, they arranged for a sale, they stipulated for its control, and they provided for a distribution of profits. Having done all these things with a full knowledge that the sale, which they attended as buyers, was under a partition in which a minor was interested, the rights of whom could not be bound by any agreement with the commissioners or among themselves, these are strong reasons why they should be liable in equity to the complainant for a proportionate share of any loss that might occur, and must prevail. That would have been the case if they had paid for such purchases in whole, or as arranged through a trustee, in part, and secured the remainder. It is equally difficult to understand, though not in question here, that there is no liability to Beam, as contended by the respondent, for any deficiency he might have to pay. The result attained renders unnecessary a consideration of the right of the complainant to a decree against these defendants as a partnership debt on the bond, or that he should be subrogated to the right of Beam to enforce contribution, though the latter would seem to be an equity in the case. The order that said defendants, John J. Brown, John H. Hindle and Margaret Hoxie, executrix, are not liable for any deficiency of proceeds of sale of the mortgaged premises to satisfy the mortgage debt of the complainant, should be reversed, and a decree entered affirming such liability, with costs.

No evidence appearing to connect the defendant Libbie Benner with any intention of becoming a purchaser at the auction sales, or of any knowledge of the sales by the commissioners, or of the agreement contemplated by the declaration of trust, the decree in her favor should be affirmed. The defendant John R. Beam, having pleaded a discharge in bankruptcy from the debt upon

the bond in question, and the plea sustained, the order in respect to his liability also should be affirmed.

For affirmance—DIXON, MAGIE, REED, GREEN—4.

For reversal—THE CHIEF JUSTICE, DEPUE, SCUDDER, VAN SYCKEL, CLEMENT, COLE, KIRK, PATERSON, WHITAKER—9.