Clayton C. Kenyon *et ux vs.* Leslie B. Kenyon *et al.*

DECEMBER 30, 1953.

Present: Flynn, C. J., Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This bill of complaint, which was filed in the superior court for Washington county, requested a sale of the real estate therein described and a division of the proceeds thereof among the parties according to their respective interests. The respondents filed an answer admitting the allegations contained in the bill and joining in the prayers thereof. Following certain other pleadings, hereinafter referred to, and a hearing thereon, a final decree was entered from which the complainants have prosecuted an appeal to this court.

It appears that upon the bill and original answer a decree of partition *prepared by respondents' attorney* and signed and *consented to* by counsel for both parties was entered October 18, 1948. That decree set forth the interests of the parties as stated in the bill of complaint, authorized a sale of the premises, appointed a commissioner to sell the same at public auction *to the highest bidder,* and further directed him to make a full report thereof to the court. Pursuant to such authority, a commissioner's sale was held on the premises at which a duly licensed auctioneer, employed by the commissioner, struck off the property to respondents' attorney for $13,100, he being the highest bidder. He thereupon paid the required deposit of 10 per cent of the purchase price and signed an agreement approving the terms of sale and agreeing to pay the balance of $11,790 as required thereby.

On September 10, 1949 respondents filed a motion to amend their answer so as to set forth certain equitable claims which, if allowed, would be inconsistent with the terms and provisions of the *consent decree* of partition previously entered. This motion was supported by an affidavit of respondents' attorney to the effect that at the time he filed the answer in behalf of respondents he knew of such claims, but labored under a mistaken view of the law that they were barred by the statute of limitations, and that he believed the assertion of other equitable claims, which were not so barred but were relatively small in amount, would militate against an amicable agreement for the sale of the premises. The respondents also filed an affidavit to the effect that these claims had not been asserted in the original answer because they relied upon the advice given by their solicitor.

On October 19, 1949 a decree was entered granting respondents' motion to amend and permitting them to file an amended and supplemental answer as requested. The complainants demurred to such answer and stated as grounds therefor that the alleged claims were barred by the statute of limitations, undue delay and laches. After a hearing a rescript was filed overruling complainants' demurrer, and thereafter the commissioner filed his report together with a motion that it be approved. The respondents then moved that the pleadings be closed and the cause assigned for hearing on the merits. They also filed a formal rejoinder and moved the cause be set down for hearing on the bill of complaint, answer, supplemental answer, replication and rejoinder.

Thereafter respondents filed a petition to reduce the sale price bid at the public auction conducted by the commissioner appointed in the original consent decree. Such petition alleged in substance that at such auction held July 8, 1949 the premises described in the bill of complaint were purchased by respondent Annie B. Kenyon for $13,100, that

being the highest amount bid; that the fair market value of the property at the time of sale was $6,000; that the respondent Annie B. Kenyon was forced by several successive counterbids made at such auction sale by Lester Burdick, who was acting in concert with and on behalf of complainants, to raise her bids to a final one of $13,100; that the bidding by Burdick was not made in good faith but constituted by-bidding and puffing for the purpose of forcing her to pay an exorbitant and unconscionable price for said property; and that by reason of such by-bidding and puffing the sale was not a fair one and worked injustice to said Annie B. Kenyon. By reason of the facts above recited, the petition prayed that the court reduce the amount required to be paid by her, in order to receive a deed of the property, from the sum of $13,100 to such amount as may in the circumstances be reasonable.

Upon respondents' motion, such petition was assigned for hearing and was heard together with the commissioner's report, the bill, amended and supplemental answer, replication and rejoinder. At the close of the testimony, following a lengthy trial, respondents moved to amend the partition decree entered by *consent* on October 18, 1948, so that such decree would conform to what respondents claimed to be the proof in the instant proceeding relative to the equitable claims of respondents, such claims not having been asserted in the original answer nor provided for in the consent decree.

The final decree entered on October 30, 1951 stated that the "cause came on to be heard on the report and the supplementary report of the Commissioner, the respondents' petition to reduce the sale price at the public auction of the real estate described in the Bill of Complaint, the respondents' Amended and Supplemental Answer, the matters set forth in the Complainants' Replication, and the Respondents' Motion to Amend the Decree of Partition * * *."

This decree expressly amended the paragraph of the

*original consent decree* which had set forth the extent of the ownership or interest of the parties thereto. It determined the validity and amount of certain equitable claims between the parties and certain other claims of complainants relative to ouster and waste on the part of respondents. It further recited that the fair market value of the real estate at the time of the auction sale was between $6,000 and $7,000; that the sale price was "boosted" by reason of puffing and by-bidding on the part of Burdick, who acted with the consent and connivance of *complainants,* resulting in boosting the price to the unconscionable figure of $13,100, which respondent Annie B. Kenyon was forced to bid through her attorney in order to purchase such real estate; and that since there were no bidders other than Burdick and respondent Annie B. Kenyon's attorney after the bid of $8,400 was made, the sale price should be reduced to that amount.

While complainants have assigned twenty-six grounds of error in their reasons of appeal, they have briefed and argued only two questions as follows: (1) "Whether the respondents' claims set forth in the respondents' amended and supplemental answer should have been considered and granted under the status of the pleadings and facts of the case." (2) "Whether the Court should have approved without change or modification the report of the Commissioner and thereby approved the auction sale of the property without reduction in the purchase price of $13,100.00."

We are of the opinion that the first question should be answered in the affirmative. In permitting the original answer to be amended after entry of the consent decree, we think the trial justice committed error. *Hazard* v. *Hidden,* 14 R. I. 356. It is well settled in this state that a decree entered by consent cannot be revoked or set aside except by consent of the parties thereto. *Hyde* v. *Superior Court,* 28 R. I. 204; *Town of Bristol* v. *Bristol & Warren Water Works,* 19 R. I. 631; *Hazard* v. *Hidden, supra.*

Furthermore, at the final hearing wherein all pending issues were being disposed of by agreement, the trial justice erroneously permitted evidence of certain equitable claims to be presented under respondents' amended and supplemental answer. In our opinion, however, the trial justice was entitled, at the hearing on the allowance of the commissioner's report, to consider the same evidence on the question of the disposition of the proceeds of the sale. Such action was not contrary to the terms of the original consent decree of partition and sale but in direct compliance therewith. That decree contained the provision: "That on sale of said premises he [the commissioner] execute and deliver to the purchaser or purchasers thereof a deed or deeds of the same and receive the purchase money therefor, and that he hold such money *subject to the further order of this court.*" (italics ours)

While the trial justice erroneously permitted evidence of the equitable claims of the parties to be presented under the amended and supplemental answer, he had authority under the *express* provisions of the original decree to consider these claims at the hearing on the commissioner's report. In the circumstances therefore his action in considering them under the amended answer, instead of receiving evidence in support thereof upon the motion for allowance of the commissioner's report, constituted harmless error. In our judgment he should not be required to hear such evidence anew, since he had before him at the hearing the commissioner's report and the original decree under which the evidence was permissible, as well as the amended and supplemental answer and other pleadings. An examination of the transcript with respect to such equitable claims does not show that the trial justice was clearly wrong in his findings of fact relative thereto and therefore they should not be disturbed.

With reference to the second question raised by complainants, we are of the opinion that the trial justice was

clearly wrong in reducing the sale price from $13,100 to $8,400, and that in so doing he misconceived the applicable law. In our judgment the "puffing and by-bidding" by Burdick, as found and set forth in the decree appealed from, did not constitute such fraudulent conduct as would authorize the trial justice either to set aside the auction sale duly held under open bidding or to reduce the sale price secured thereat. A person who attends a sale for the purpose of inflating the value of the property in behalf of those interested in the sale is often referred to as a "puffer." But in the strict legal sense of the word a "puffer" is a person who, without having any intention to purchase, is employed by the *seller* to raise the price by fictitious bids while he is secured from any risk by a secret understanding with the *seller* that he shall not be bound by his own bids.

The objectionable feature is that a puffer is acting for a person having such control over the auction that he can be released from all responsibility for his bid while other bidders may not be released. But the mere fact that a person, who is interested in the property to be sold or in the proceeds of such sale, procures another to bid either openly or secretly in his behalf does not constitute such bidder a "puffer" in the sense that his action may vitiate the sale. If, notwithstanding an agreement by such a person to hold the bidder harmless, the auctioneer can hold him responsible for the amount of his bid, then he would not be a "puffer" in the sense that his conduct would vitiate the sale. See 5 Am. Jur., Auctions, §22, p. 460.

It is clear from the evidence and the findings of the trial justice in the instant cause that there was no connivance or collusion between the commissioner or the auctioneer and Burdick. In his rescript he stated: "It is not contended by any of the parties that the Commissioner did not perform his duties in a proper and legal manner. It is agreed by the parties that insofar as the Commissioner and his auctioneer are concerned the auction was properly conducted."

Moreover both the commissioner and the auctioneer testified that they regarded each bid received as a *bona fide* one and there is no basis in the evidence for a contrary conclusion. Therefore if Burdick had made the highest bid he would have become liable to the commissioner for the purchase price and could be held bound thereby. In these circumstances even if Burdick had acted secretly or openly for the benefit of complainants, he would not be a puffer in such legal sense as would vitiate the auction sale. See *McMillan* v. *Harris*, 110 Ga. 72. 5 Am. Jur., *supra*. We are therefore of the opinion that the action of the trial justice in reducing the price bid at the auction sale constitutes reversible error.

The complainants' appeal is sustained, the decree appealed from is reversed in part, and on January 8, 1954 the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Edward M. Botelle,* for complainants.

*George F. Troy, Edward M. McEntee,* for respondents.