WOELFEL *v.* TYNG ET AL., TRUSTEES

[No. 113, September Term, 1959.]

(Two Appeals In One Record)

*Decided February 29, 1960.*

*Motion for rehearing filed March 29, 1960, denied April 12, 1960; motion for clarification filed March 29, 1960, granted April 12, 1960, and opinion modified.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*George B. Woelfel,* for appellant.

*Franklin Somes Tyng,* with whom was *Charles E. Edmondson,* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of an equity court overruling exceptions by, and ratifying a sale to, a purchaser at a judicial sale of certain marsh land described as parcel No. 3. There is a cross-appeal by the Trustees from another part of the decree sustaining the exceptions of the same purchaser as to a one-half interest in parcel No. 5.

The case originated as a bill for partition filed by George W. Robbins, one of the heirs of the late Alexander G. Robbins, against the other eight heirs, his brothers and sisters. Trustees were appointed and they were directed to sell the properties at public auction. These properties consisted of two parcels of about twenty-nine acres in the "home" place, improved by a frame dwelling, and six other parcels of marsh land, that had been acquired by the decedent, principally by patents from the State. Parcel No. 3 had been acquired by patent in 1901, and contained about sixteen acres. Parcel No. 5 had been acquired by patent in 1918, and contained about 244 acres.

The advertisement of sale described the various parcels to be offered. It was stated that no deed was on record as to the first parcel, containing about forty acres, but it was claimed to have been used by Alexander G. Robbins and his

heirs for at least fifty years. The second parcel, containing about sixty-nine acres, was described by metes and bounds, and a reference given to the patent records. The third parcel was similarly described, as was the fourth, containing about 456 acres, and the fifth, containing about 244 acres. The sixth and seventh parcels, constituting the "home" place have already been referred to. The eighth parcel, containing about eight acres, adjoined the second parcel, and was described by metes and bounds and identified by patent references. The advertisement further stated: "All of the above described parcels consist primarily of marshland suitable for duck shooting (especially black ducks) and muskrat trapping. All of the said tracts are located on the Blackwater River or its tributaries, with the exception of 'Robbins Expectation' (paragraph fifth) which is located near the head of Fishing Bay." The terms of sale were stated to be "cash at the time of sale, or one-third cash * * * and the balance in three months thereafter, or the balance in cash, at the option of the purchaser or purchasers, upon final ratification of said sale * * *."

The sale was duly advertised and held on April 1, 1958. Parcels 1 and 5 were struck off to George Robbins for $4,200 and $2,750 respectively, parcels 2, 4 and 8 were struck off to Mr. Matthews, a real estate agent, who later announced that he was acting for Baker Robbins. Parcels 6 and 7 were struck off to Pauline Leopard, one of the heirs. Parcel 3 was struck off to Mr. Woelfel. The bidders then went to the office of one of the Trustees, where Mr. Woelfel paid cash for parcel 3, and also paid one-half the amount bid by George Robbins for parcel 5. (Through mistake, his payment was $50.00 less than one-half.) This sale was reported as having been made to George Robbins and George Woelfel. A heated argument arose as to how the parcels bought by Mr. Matthews as agent should be entered, and as to whether the heirs who were successful bidders should be entitled to credit their interests in the proceeds of sale against their purchases. Mr. Woelfel then left. None of the other purchasers made any payments on their purchases, although Matthews subsequently paid for the three parcels knocked down to him. George Robbins and Mrs. Leopard have never paid anything and they are reported

to have left the State. The parcels on which they bid have been ordered resold. Mr. Woelfel duly excepted to the report of sale.

The appellant contends that the sale to him of parcel 3 should be set aside because he discovered after the sale that there was no right of way by land to that parcel or to parcel 5, and because the bidding was "puffed" by the other successful bidders. He testified that he obtained from the trustees prior to the sale the appraisal made for them in the partition proceeding and obtained a detailed map of the county. He asked them where the properties were located, and who could show them to him. Mr. Tyng, one of the trustees, referred him to Mr. Wheatley, the auctioneer, and to Mr. George Robbins. Possibly because he came down only on Saturdays, he did not succeed in obtaining either one as a guide, and did not locate the properties until after the sale. It may be doubted whether he used due diligence under the circumstances. In *deTamble v. Adkins,* 210 Md. 414, 420, in connection with the sufficiency of a notice of sale we said: "Each advertisement described the property so that it could be located by the exercise of ordinary intelligence and so that more detailed information concerning it could be obtained, if desired." In that case the property was described by metes and bounds, but its general location was given as "adjoining the development known as 'West View Shores' on the east shore of the Chesapeake Bay." This was held sufficient, citing *Sawyer v. Novak,* 206 Md. 80; *Preske v. Carroll,* 178 Md. 543; *Clemens v. Union Trust Co.,* 170 Md. 520; and *Shaw v. Smith,* 107 Md. 523. See also *Stofberg v. Levland, Inc.,* 213 Md. 477, 482, *Ivrey v. Karr,* 182 Md. 463, 473, and *Columbia Paper Bag Co. v. Carr,* 116 Md. 541, 544. It is well settled, under these decisions, that complete accuracy is not required in an advertisement, and that a judicial sale will not be set aside without a clear showing that an omission misled anyone, or had a prejudicial effect.

The advertisement in the instant case described the parcels as marsh land, suitable for ducking or trapping. There was no representation as to rights of way. On the contrary, a careful reading of the descriptions shows that all of the par-

cels were taken up as unoccupied lands as patents from the State, and that they were located on navigable waters at varying distances from the "home place", even in different election districts. There was no reference to rights of way in any of the descriptions. Only in the case of the "home place" was there any call to a public road. The appellee could hardly have supposed that he would be allowed access on foot or by motor vehicle over the contiguous lands of strangers. Indeed, it has been held in some cases that a way of necessity cannot be implied over contiguous lands of a grantor, where there is access over navigable waters. See *Hildreth v. Googins,* 39 Atl. 550 (Me.), *Flood v. Earle,* 71 A. 2d 55 (Me.), and 3 Tiffany, *Real Property,* § 794, p. 296 (3d ed.). We think *Jay v. Michael,* 92 Md. 198, relied on by the appellant, is distinguishable on the facts.

Mr. Woelfel testified he was familiar with gunning practices in that area. He admitted that there was access by boat to the parcels from at least two public wharves, and that he had no difficulty in locating them after the sale. Had he been diligent, he could have located the parcels before making his bids. His real complaint seems to be, not that they can only be reached by boat, but that the boat ride is too long.

On the question of "puffing", the chancellor found no evidence that the bids by the various heirs were not made in good faith. "Puffing" has been described as fraudulent or collusive action between the seller and the bidder, and no fraud or collusion between the trustees and the bidders is alleged. (Cf. *Kenyon v. Kenyon,* 101 A. 2d 477, 480 (R. I.). The bids made on behalf of Baker Robbins were ultimately made good, and the defaulting purchasers were not excused from liability. While it has been said that the court is not bound to depart from the terms of sale, *Camden v. Mayhew,* 129 U. S. 73, it has been recognized that distributees of the proceeds of sale may, under some circumstances, properly be allowed, as credits against the purchase price, their distributive shares. *Murdock's Case,* 2 Bland 461, 468 (Md.); cf. *Hopper v. Williams,* 75 Md. 191, 193. In the instant case it was not shown that Woelfel's bid of $1,900 on parcel 3 was induced by bids of any of the heirs. As to the successful bid

of George Robbins for parcel 5, the appellant can hardly be heard to complain that it was the result of "puffing" when he sought to take advantage of it by agreeing to take a half interest in the property purchased.

On the cross-appeal, parcel 5 was struck off to George W. Robbins by the auctioneer, and the appellee undertook to take a one-half interest in that purchase. But George Robbins never completed it. It is conceded that the trustees could not be required, under the terms of sale, to convey less than the whole interest in the property. Mr. Woelfel insisted that the sale be recorded as to Robbins and him jointly, and testified flatly that the purchase was joint. The chancellor found that the agreement was that each should "be responsible for one-half of the purchase price of $2,750.00".

This was true as between Robbins and Woelfel, but we find nothing to support a finding that the liability, as to the trustees, was several. See 92 C.J.S. *Vendor and Purchaser,* § 262, *Walker v. Sarven,* 25 So. 885 (Fla.), and *Burhans v. Beam,* 37 N. J. Eq. 593. Cf. *Gross v. Cades,* 146 Atl. 40 (N. J.) See also 4 Corbin, *Contracts,* § 928 (1950). We think the property should be resold for their joint account, because of the default in payment of the other one-half of the purchase price, unless Mr. Woelfel should elect to make good the default. If he does, the chancellor should pass such order or orders as to properly protect his interest so acquired.

*Decree affirmed in part, reversed in part. Costs to be paid by the appellant.*

PRESCOTT, J., filed the following dissenting opinion.

The advertisement of sale, which omitted any mention of the absence of access by land to the tracts here in question, seems insufficient. The trustee, acting as the arm of the equity court, has made a contract with a purchaser at a judicial sale for the sale of real estate, which has no access to it except by air, water or across land of third parties; and now, in effect, that contract is being specifically enforced, though the purchaser made seasonable objection to the ratification of the sale upon learning of this non-access.

The rule of *caveat emptor* has no application to a judicial

sale until it has been finally ratified. *Byrd v. Day,* 138 Md. 442, 445, 114 A. 486. The reason for this rule is obvious. Bidders at judicial sales do not desire to incur the expense of having titles searched, unless they are the successful bidder. The advertisement in the instant case made absolutely no mention of the fact that there was no right of way to either parcel of land here involved except by air or water, although the calls in parcel 3 make such references as "letter A, on plot, * * * also being the northwest corner of William H. Robbins' *land* and the northwest corner of Howard E. Wrotens *land.*" (Italics added.) In spite of the fact that the purchaser excepted to the ratification of the sale when he learned that he would have no access to it except by boat or air,[1] this Court, in equity, requires that he consummate two purchases which will be of little use to him.

A sale made by a trustee acting for the court is very different from that of a conventional trustee. "* * * the court is the vendor, acting for and in behalf of all parties interested. The contract of sale is a transaction between the court as vendor, and the purchaser; and the contract is never regarded as consummated until it has received the sanction of the court. Before ratification the transaction is merely an offer to purchase, but which has not been accepted. * * * The trustee is the mere hand, agent or officer of the court, acting as an attorney under a special delegated authority. * * * A trustee appointed by decree is not the trustee of the parties to the case, but the trustee of the court." Miller, *Equity Procedure,* Sections 486, 487.

Thus, it is seen that the equity court, by its agent, had advertised property for sale to which there was no right of way (except by air or water) without mentioning the fact of non-access, though its desirability as a ducking shore had been pointed out. The purchaser, when he bid at the sale, made an offer to purchase, but asked to be relieved of his offer upon

---

1. In this case, the two parcels are about 8 miles apart by air. If the purchaser uses one parcel for ducking purposes, he will be required to keep two boats—one small one to get out of a little river and a larger one to cross the waters of the Bay. I think it was stated at argument a distance of some eight miles.

learning of this lack of access by land. The court, however, in effect said, "No, the court is going to accept your offer and hold you to the bargain, notwithstanding the fact that you did not know there was no customary access to the property."

It would seem that what the court should be interested in is seeing that the property was properly put upon the market so as to protect all of the parties—including the purchaser—i.e., to see that the parties to the partition suit have their property properly and fairly advertised, and that there is no omission in the advertisement that misleads or prejudices the purchaser.

The majority opinion correctly states the rule "that complete accuracy is not required in an advertisement (of a judicial sale)" and the sale will not be set aside without "showing that an omission *misled* anyone, or had a *prejudicial effect*." (Italics added.) This is the very crux of the appellant's case.

The cases and textbooks are full of instances where relief has been given because of omission by trustees acting for and in behalf of courts of equity. As early as the case of *Tomlinson v. McKaig,* 5 Gill 256, 276, 277, this Court said, "Before the ratification * * * all objections to a sale are open for consideration, and the sale will be set aside upon the proof of error, mistake, misunderstanding or misrepresentation as to the terms or manner of the sale. Before ratification, the sale must appear to be in all respects *fair* and *proper,* or it cannot receive the sanction of the Court." (Italics added.) In *Kauffman v. Walker,* 9 Md. 229, 240, this Court again said that "where the court can see that injustice will be inflicted by the ratification of a sale upon a party not in default, by reason of the carelessness or omission of its own officer, it should interfere to prevent it." See also, 30A Am. Jur. *Judicial Sales,* Section 58; Freeman, *Void Judicial Sales,* p. 163; 8 Thompson, *Real Property* (Perm. Ed.), Section 4585; *Hammond v. Cailleaud,* 111 Cal. 206, 219, 43 P. 607.

The case of *Hunting v. Walter,* 33 Md. 60, is quite similar in principle to the case at bar. There, the purchaser made his bid under the mistaken belief that he was buying property subject only to a ground rent mentioned in the advertisement

of sale. This Court, in releasing the purchaser, said, "It would be a great wrong to hold a purchaser, who became such through a mistake, and in ignorance of the liabilities, he was incurring, to a strict compliance, unless some rule of law required it."

I think that when the purchaser learned of the non-access and requested the court to release him from his offer, by filing seasonable exceptions to the ratification of the sales, this relief should properly have been granted to him.

Chief Judge Brune has authorized me to say that he concurs in this dissent.