HARRY IVREY *v.* HARRY E. KARR, ASSIGNEE

[No. 52, October Term, 1943.]

464

*Decided December 15, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, ADAMS, and BAILEY, JJ.

*Benjamin Michaelson* and *Emanuel Klawans* for the appellant.

*William J. McWilliams*, with whom were *McWilliams, Duckett & Haley* and *Harry E. Karr* on the brief, for the appellee.

BAILEY, J., delivered the opinion of the Court.

This is an appeal by Harry Ivrey, purchaser, from an order and decree of the Circuit Court for Anne Arundel County, in equity, overruling exceptions filed by the purchaser to the ratification of a sale made by Harry E. Karr, assignee for the purpose of foreclosure, of the Cooper Apartments in the City of Annapolis, and ratifying the said sale.

On October 15, 1928, the Cooper Apartment Corporation executed two mortgages to Mortgage Guarantee Company, the first to secure a loan of $90,000 to be repaid five years after date with interest at the rate of 6 per centum, payable quarterly, and the second to secure a loan of $25,000, to be repaid in certain installments set forth in said mortgage and the balance in five years, with interest at the rate of 6 per centum, payable quarterly. Both mortgages were liens on the real estate

owned by the Cooper Apartment Corporation, consisting of two lots at the southwest corner of Maryland Avenue and Hanover Street in Annapolis, which were improved by a four-story apartment house, containing twenty-seven apartments and known as the Cooper Apartments. Both mortgages contained the usual power of sale and the following special provision: "And upon any default in any of the covenants of this mortgage, the mortgagee shall be entitled, without notice to the mortgagor, to the immediate appointment of a receiver of said property, without regard to the adequacy or inadequacy of the property as security for the mortgage debt; and upon any such default, whether or not a receiver be appointed, the rents and profits of said property are hereby assigned to the mortgagee as additional security."

By a series of assignments both mortgages became vested in the Equitable Trust Company, and on November 23, 1942, the second mortgage was assigned by the Equitable Trust Company to the Title Mortgage and Management Company. On November 25, 1942, the latter company assigned the same to Harry E. Karr, attorney, for the purposes of foreclosure.

On November 27, 1942, foreclosure proceedings on the second mortgage were instituted by Karr, the assignee. The property was advertised for sale at public auction at the court house door in Annapolis on Tuesday, February 2, 1943, at 11 o'clock A. M. The advertisement, after describing the property by metes and bounds, contained the following provisions:

"Subject to a first mortgage from The Cooper Apartments Corporation to the Mortgage Guarantee Company dated October 15, 1928, and recorded among the Land Records of Anne Arundel County in Liber F. S. R. 40, Folio 51, which by mesne assignments (the last dated December 20, 1940, and recorded among the Land Records aforesaid in Liber J. H. H. 22, Folio 175, now vests in the Equitable Trust Company), the principal indebtedness thereunder now amounts to $90,000.00, to-

gether with interest thereon at 4½% per annum from October 15, 1942.

"The property is improved by a four (4) story and basement building, containing twenty-seven (27) apartments overlooking the United States Naval Academy.

"The building is the largest and most modern apartment house in the City of Annapolis.

"Terms of Sale: A deposit of One Thousand Dollars ($1,000.00) will be required of the purchaser at the time and place of sale; the balance of the purchase money, together with interest thereon at the rate of six per cent. per annum, from the date of sale to be paid in cash upon the final ratification of the sale by the Circuit Court for Anne Arundel County; State, County and City taxes, metropolitan sewerage commission liens, water rents, insurance and all other public charges and assessments of every kind and character, apartment rents and outstanding operating accounts for the operation of the apartment house to be adjusted to the date of sale."

The sale was conducted by Sam W. Pattison & Co., auctioneers, acting through one Hartje. There were present at the sale, among others, Karr, the assignee, McWilliams, his attorney, the following representatives of the Equitable Trust Company, holder of the first mortgage: Tinsley, its vice-president and trust officer, and Boyd, its attorney, and Englar, who represented certificate holders under the first mortgage.

The amount due on the second mortgage was $12,830, with interest from October 15, 1942, according to the statement of mortgage claim filed in the proceedings simultaneously with the assignee's bond on February 1, 1943. The only bid received at the sale was that of Ivrey in the amount of $5,000. Immediately after the sale the auctioneer signed the usual certificate stating that he had sold the property to Ivrey for the sum of $5,000, subject to the mortgage mentioned in the advertisement, Ivrey being at that figure the highest bidder therefor, and that the sale was fairly made. At the same time Ivrey signed the following certificate and agreement on a printed copy of the advertisement of sale:

"I hereby certify that I have this 2nd day of February, 1943, purchased the within described property from Harry E. Karr, Assignee, at and for the sum of Five Thousand Dollars (subject to mortgage aforesaid) ($5,000.00) and I hereby agree to comply with the terms of said sale as set forth on the reverse side hereof.

"Harry Ivrey (Seal)"

The assignee filed his report of sale on February 4, 1943, and on the same day the clerk passed an order *nisi* thereon, providing for the ratification of the sale unless cause to the contrary was shown on or before March 8, 1943. On March 5, 1943, Ivrey, the purchaser, excepted to the ratification of the sale. Thereafter the assignee filed his answer to the exceptions, testimony was taken in open court and the chancellor passed an order and decree overruling the exceptions and ratifying the sale. It is from this order and decree that the present appeal is taken.

The purchaser excepted to the ratification of the sale for the following reasons:

1. That before the sale the attorney conducting the sale represented to him that the rents of the twenty-seven apartments ranged from $45 to $80 per month and that it was in reliance upon this representation that he submitted his bid, whereas in fact the said rentals ranged from $30 to $55 per month, which fact was not known to him until after he had become the purchaser.

2. That before his bid was accepted he notified the attorney conducting the sale that he withdrew his bid, and that he proceeded with the purchase by reason of the coercion of said attorney in advising him that his bid could not be withdrawn even before acceptance and that he would be held responsible.

3. That the advertisement stated that the interest rate on the first mortgage was 4½ per cent. and that he did not know that the interest rate thereon was 6 per cent. until after he had become the purchaser.

4. That the advertisement stated that the property was "the most modern apartment house in the City of

Annapolis," whereas in fact there are no gas connections or installations, no electric bells and no individual mail boxes; that this was not known to him at the time he placed his bid, and that he would not have made his bid had be known this fact.

5. That at the time of the sale, the entire first mortgage debt was due and in arrears; that under the terms of the first mortgage all rents had been assigned to the first mortgagee; that Karr, the assignee, had been appointed receiver for the collection of said rents under a proceeding instituted in the Circuit Court for Anne Arundel County; that he had no knowledge of any of these matters until after he became the purchaser, and that if any of said matters had been known to him he would have submitted no bid for the property.

6. That the holder of the first mortgage has demanded that the purchaser personally assume the first mortgage indebtedness and pay immediately the sum of $20,000 on account of same, and has asserted its claim to the rents under the terms of the first mortgage.

7. That the proceedings are defective because of errors in the description of the property offered for sale.

The sale in this case was made in pursuance of the power inserted in said mortgage under the authority of Sections 6 to 10, inclusive, of Article 66 of Bagby's Annotated Code of Maryland, now codified as Sections 6, 8 to 11, inclusive, of Article 66 of the Code of 1939. These sections provide a summary mode for the exercise of the general jurisdiction of a court of equity. *Cockey v. Cole*, 28 Md. 276, 282, 92 Am. Dec. 684; *Warehime v. Carroll County Building Association*, 44 Md. 512, 517. In sales under these sections the trust commences with the filing of bond by the party making the sale, and when this has been done the proceedings are brought under the cognizance and guidance of the court and are to be conducted and determined in all respects as ordinary sales by a trustee appointed by decree of the court. *Warfield v. Dorsey*, 39 Md. 299, 302, 17 Am. Rep. 562; *Gaither v. Tolson*, 84 Md. 637, 641, 36 A. 449; *Patapsco Guano Co.*

*v. Elder,* 53 Md. 463; *Beetem v. Garrison,* 129 Md. 664, 99 A. 897; *Miller's Equity Procedure,* Sec. 456.

In *Stewart v. Devries,* 81 Md. 525, 32 A. 285, this court has stated that "it was well settled in this State that a trustee appointed by a court of equity is the agent of the court, and hence, if the question be raised in due time, the court will see that no undue advantage is taken of the purchaser, and he will not be compelled to comply with the terms of a sale if it would be inequitable for him to do so, especially if there has been any misrepresentation, intentional or otherwise, by the trustee. That rule is necessary for the purposes of justice, as well as to encourage bidding at trustees' sales. But, when a purchase is made by one who is cognizant of all the essential facts necessary to enable him to understand what the trustee is selling, the court should be equally zealous in protecting the rights of those interested in the proceeds of the sale of the property, and in not permitting its agent, the trustee, to be trifled with."

And it was said in *Kauffman v. Walker,* 9 Md. 229, 240: "Judicial sales will not be set aside for causes that the parties in interest might, with a reasonable degree of diligence, have obviated. Every intendment will be made to support them."

Let us now consider the exceptions filed by the purchaser, in the light of the aforegoing general principles of law and in connection with the evidence produced at the hearing.

The first exception charges misrepresentation by the attorney conducting the sale as to the amount of rental received from the property. Both Karr, the assignee, and McWilliams, his attorney, denied making any statements concerning the rents. Ivrey testified that he heard one Thomas make the statement that he thought the rents were from $45 to $85 per month for each of the twenty-seven apartments, but when Thomas was called as a witness by the appellant he testified that he made the statement "I guess the rentals would average $55.00 per month." Lee, the agent who actually collected the

rents, testified that the monthly rentals amounted to $1,491, so that Thomas' estimation was actually $6 less than the correct amount. We find no evidence in the record to support the contention that there was any misrepresentation as to the amount of the rental by any of the parties conducting the sale. And the purchaser could not have been misled by the statement of Thomas.

The second exception charges that he attempted to withdraw his bid and that thereafter he proceeded with the purchase because of the coercion of the attorney conducting the sale. The evidence discloses that after Ivrey had made his bid of $5,000, some question arose as to certain garages across an alley from the apartment building. He was informed that the garages across the alley did not belong to the apartment building and were not a part of the sale. He then requested that the sale be held up until he had an opportunity to inspect the property. His request was refused and the auctioneer continued to cry the property. It was at this point that Ivrey made some statement about withdrawing his bid, and he was told by the attorney, McWilliams, that he had made a bona fide bid of $5,000, that unless a larger bid were received the property would be knocked down to him and that he would be held responsible. The only discussion at this time concerned the garages, and the evidence discloses that the only reference to the withdrawal of the bid came when the request to hold up the sale for an inspection of the property was refused. Thereafter Ivrey acknowledged the bid to the auctioneer, signed the certificate and agreement which we have previously referred to, and gave the assignee his check for $1,000 in compliance with the terms of sale. We find no evidence of coercion here.

There can be no doubt of the legal right of a bidder to withdraw his bid at any time before the hammer falls. It is stated in *Williston on Contracts*, Rev. Ed., Vol. 1, Sec. 29: "Since the bargain is incomplete until the hammer falls, a bidder may therefore retract his bid until that time." And in 7 *C. J. S., Auctions and Auctioneers,*

472

Sec. 7, page 1254, there is the following statement of the rule: "Until the hammer falls and a bid is accepted, *a locus penitenntiæ* remains, and the bidder may withdraw his bid," citing *Conway Savings Bank v. Cinick,* 287 Mass. 448, 192 N. E. 81. But in the present case we find as a matter of fact that, instead of withdrawing his bid, Ivrey, the purchaser, reaffirmed and acknowledged it freely and without coercion. For these reasons the second exception is without merit.

It is unnecessary to discuss the third exception further than to say that from the undisputed evidence in the case the error in the advertisement of sale stating that the interest on the first mortgage was at the rate of 4½ per cent. was corrected, when the advertisement was read by the auctioneer at the commencement of the sale and that Ivrey knew at the time he placed his bid on the property that the interest rate on the first mortgage was 6 per cent.

The fourth exception alleges deception and misrepresentation by the assignee in describing the property in the advertisement as "the most modern apartment house in the City of Annapolis." In support of this contention it is shown in the evidence that the building contains no connections for gas stoves and that there are no electric bells and no mail boxes at the entrances to the several apartments, but the evidence does disclose that all the apartments are equipped with electric ranges and that there are individual mail boxes in the lobby. This exception relates to trivial matters, which could have been discovered by the purchaser or anyone interested in the property by a mere casual inspection of the premises. The purchaser had lived in Annapolis thirty-two years, was the owner of three apartment houses, as well as other real estate in Annapolis, and had been familiar with the Cooper Apartments ever since they were built. There is nothing in the evidence to show that the statement contained in the advertisement was false or misleading, and the purchaser knew, or should have known, the physical condition of the property which he was buying.

This brings us to the fifth and most serious exception urged against the ratification of the sale, namely, that there was no disclosure by the assignee that the first mortgage was due and demandable, that the rents had been assigned to the first mortgagee and that the assignee had been appointed receiver to manage the property and collect the rents.

In *Wicks v. Wescott*, 59 Md. 270, at page 277, this court has said: "As a general rule, we do not think it is the duty of the assignee or trustee, in selling property, upon which prior incumbrances exist, to ferret out the exact state of such liens, and ascertain how much, if any, may be due upon them. The rule of *caveat emptor* excludes such rigid exaction of a trustee. * * * This may not have been his duty; but if he was not bound to inquire or make any statement respecting the amount of arrears, the trustee was bound, if he undertook to make any statement respecting it, to be sure that the statement he did make was, at least, approximately accurate, and not in anywise misleading."

The advertisement discloses the date, the place of record, the name of the holder, and the amount of the principal indebtedness and interest of the first mortgage. It states that taxes, insurance, other public charges, rents and operating accounts are to be adjusted to the date of sale.

It is a well-settled principle of law that the recording of a conveyance, whether deed or mortgage, in compliance with the provisions of Article 21 of the Code of 1939, operates as constructive notice upon all subsequent purchasers of any estate, legal or equitable, in the same property. *Williams v. Banks*, 11 Md. 198, 250; *Cooke's Lessee v. Kell*, 13 Md. 469. Ivrey, as purchaser, is thus charged with knowledge of the following facts, which an examination of the first mortgage on the Land Records of Anne Arundel County would have disclosed: that it was due and demandable and that it contained a provision for the assignment of rents upon default. In addition there is testimony to the effect that the purchaser

was told by Karr at the time of the sale that the first mortgage was due. Karr also announced at the time of the sale that he was holding the personal property contained in the apartment house as receiver and that he would ask authorization of the court in the receivership case to sell the equitable title to all the personal property for $100, subject to the lien of the first mortgage. Nothing seems to have been announced about the collection of rents by the recevier. However, we cannot see how the purchaser was prejudiced by the pendency of the receivership case. The receiver was appointed at the instance of the second mortgagee, and upon the final ratification of the sale of the property to the purchaser in this case and the compliance by the purchaser with the terms of sale, the interest of the Title Mortgage and Management Company, second mortgagee, in the property and the rents derived therefrom would cease. Ivrey, the purchaser, would then become entitled to the rents and there would be no necessity for the continuance of the receivership, unless demand for the rents was made by the first mortgagee, under the terms of its mortgage. And this demand could be made by it, irrespective of the pendency of the receivership case instituted at the instance of the second mortgagee. There is no evidence, however, of any demand for the rents on behalf of the holder of the first mortgage. We have concluded from all the evidence in the case that the disclosure, in the advertisement and at the sale, with respect to the status of the first mortgage and the rents, was fair, accurate and not in anywise misleading.

Much that we have said with respect to the fifth exception applies with equal force to the sixth. Immediately after the sale Ivrey approached the representatives of the Equitable Trust Company, the first mortgagee, who attended the sale, and asked for an extension of the first mortgage and a reduction of the interest rate, upon his making repairs to the property, paying an agreed amount on the principal, with the balance to be amortized in some manner to be mutually agreed upon.

He was informed that if he would submit his proposition in writing it would be considered. Thereafter he met Boyd and Tinsley at the latter's office in Baltimore and the matter was discussed in detail. At that time his offer was to pay interest and taxes and make repairs to the property, and, if he was able, to pay off $2,000 in six months. He was advised that no such proposition could be presented to the certificate holders under the first mortgage with the hope of receiving a favorable reply. It was in the further discussion at this time that it was suggested that if $20,000 could be paid on the principal, the certificate holders might be satisfied to extend the maturity of the mortgage and reduce the interest rate. There is no evidence in the record to support the purchaser's contention that the first mortgagee has demanded that he personally assume the first mortgage indebtedness or that he pay immediately the sum of $20,000 on the same. The purchaser knew that he was buying the property subject to a mortgage for $90,000 then due, and all the evidence discloses is an attempt on his part to make an advantageous bargain with the holders thereof for an extension of the mortgage. And even if the first mortgage holder had demanded payment of its lien in full, it would have been within its rights under the terms of its mortgage, but this fact could not be urged by the purchaser as a reason for refusing to ratify the sale in this case, as his bid was made with full knowledge of the rights of the first mortgagee.

The seventh and final exception is based upon errors in the description of the property offered for sale. It is admitted that there were two minor errors in the detailed description of the two lots. These appeared in the advertisement of sale and in the assignee's report of sale. However, the original mortgage, which contained a correct description of the properties, was filed in the case and the assignee, in his report of sale, stated that he offered for sale at public auction the property described in said mortgage. The purchaser does not claim that he was misled in any way by the errors in

the description. He has bought exactly what he thought he was buying. But he contends that the errors make both the proceedings and his title defective. We cannot agree with this contention. The general rule is that any description that correctly informs the public of the property to be sold is sufficient, and a notice which certainly identifies the property to be sold is not vitiated by deficiencies or even inaccuracies in the description where these are not of a character to mislead anyone. 35 *C. J., Judicial Sales,* Sec. 31, page 22.

In the case of *Preske v. Carroll,* 178 Md. 543, 547, 16 A. 2d 291, 293, it is stated: "It is now a familiar principle that the description of property in a notice of sale under foreclosure proceedings should be sufficient to enable anyone, by the exercise of ordinary intelligence, to locate the property and to obtain more detailed information concerning it, if desired. *Welch v. Byerly,* 150 Md. 107, 112, 132 A. 616, 618. * * * It has also been held unnecessary in foreclosure proceedings to mention in the notice of sale the metes and bounds of the land. *Stevens v. Bond,* 44 Md. 506."

Applying the above principles to the instant case we are forced to the conclusion that the admitted errors in the detailed description of the property are not of such a character as to furnish any basis for vacating the sale.

For the reasons assigned, the order and decree, overruling the exceptions of the purchaser and ratifying the sale, must be affirmed.

*Order and decree affirmed, with costs.*