THOMAS A. GARLAND, TRUSTEE *v.*
FRANCIS W. HILL

[No. 295, September Term, 1975.]

*Decided November 6, 1975.*

The cause was argued before MOYLAN, GILBERT and MASON, JJ.

*Edward S. Digges* and *Richard J. Clark* for appellant.

*M. Wayne Munday* for appellee.

GILBERT, J., delivered the opinion of the Court.

Thomas A. Garland, acting as trustee,[1] purchased 359.43 acres in Charles County, Maryland, from Francis Hill. The agreed price was one thousand dollars ($1,000.00) per acre, a total of three hundred fifty-nine thousand, four hundred thirty dollars ($359,430.00). Garland paid Hill seventy-two thousand dollars ($72,000.00) toward the purchase price and the balance took the form of a purchase money mortgage from Garland to Hill in the amount of two hundred eighty-seven thousand, four hundred thirty dollars ($287,430.00). The mortgage, dated November 1, 1972, called for ten annual installments of twenty-eight thousand, seven hundred forty-three dollars ($28,743.00) together with

---

1. The record does not reflect for whom Mr. Garland acted as trustee.

annual interest of seven percent (7%) on the unpaid principal balance.[2] The mortgagor defaulted, and M. W. Munday, Esquire, attorney for Hill and assignee for the purpose of foreclosure, placed an advertisement in *The Times-Crescent*, a newspaper printed in Charles County. The advertisement first appeared in the edition of October 30, 1974, and last appeared on November 13, 1974. Munday, as assignee of Hill, filed an "Order to Docket Suit" in the Circuit Court for Charles County, Maryland, on November 6, 1974, one week *after* the first insertion of the advertisement relating to the sale.

The property was sold at public auction at the courthouse door on November 15, 1974. At the time of the sale the balance due on the mortgage as of October 1974 was two hundred eighty-six thousand, six hundred eighty-seven dollars ($286,687.00). Hill, the mortgagee, bid twenty-five thousand dollars ($25,000.00), and his bid was the only bid. The property was "knocked down" by the auctioneer to Hill. Thereafter, the assignee reported the sale to the court, and an order *nisi* was passed warning everyone to show cause within a prescribed period of time why the sale should not be ratified and confirmed. Garland filed exceptions to the sale, and the matter was heard before Judge James C. Mitchell who, on March 31, 1975, denied the exceptions and ratified the sale. Garland appealed.

In this Court Garland argues, as he did in the circuit court, that:

I. "The sale should . . . [be] set aside because the advertisement and the sales price do not support a conclusion that the sale was fairly made."

II. "The proceedings were improper. The case should have been docketed and placed under the supervision of the court as the first act of the assignee."

---

2. The mortgage contained various other terms not here pertinent.

The Court of Appeals has repeatedly held that the description of the property that is contained in the notice of sale under a foreclosure proceeding is sufficient if the notice enables ". . . any one, by the exercise of ordinary intelligence, to locate the property and to obtain more detailed information concerning it. . . ." [3] *Preske v. Carroll,* 178 Md. 543, 547, 16 A. 2d 291, 293 (1940). *See also: Brooks v. Bast,* 242 Md. 350, 219 A. 2d 84 (1966); *Ruby v. Bowlus,* 217 Md. 115, 140 A. 2d 513 (1958); *deTamble v. Adkins,* 210 Md. 414, 124 A. 2d 276 (1956).

The notice of sale that appeared in *The Times-Crescent* read, in part, as follows:

"ASSIGNEE'S SALE

OF

VALUABLE

REAL ESTATE

Situate, lying and being in the Ninth Election District of Charles County, Maryland

Under and by virtue of the power of sale contained in a certain mortgage from Thomas A. Garland, Trustee, to Francis W. Hill, dated November 1, 1972, and recorded among the Mortgage Records of Charles County, Maryland in Liber No. 266, Folio 536 et seq; the Mortgagor being in default of some of the covenants contained in said mortgage, the undersigned will sell by Public Auction at the Court House door in the Town of La Plata, Maryland,

ON Friday,

November 15, 1974

at the hour of

12:30 P.M.

the following property, that is to say:

---

3. *According to Garland's testimony only five persons attended the sale. The five were Garland, Munday, the auctioneer, Hill, and Hill's driver, but lack of attendance does not indicate a lack of notice any more than a lack of interest.*

All that lot, piece, or parcel of land situate, lying and being as aforesaid, and more particularly described as follows:

Beginning at a pipe on the south side of the Hughesville-Benedict State Road, said pipe being also the southeast corner of the Church lot (formerly marked by a stone). Running thence from said beginning point along the old country road the following courses and distances viz:

\* \* \*

2.  South 86 degrees 29 minutes East 108.2 feet to a pipe, thence along the right of way for Hughesville-Benedict State Road, Maryland Route 231 (80 feet wide),

\* \* \*

16.  North 85 degrees 42 minutes East 452.50 feet to a pipe, thence leaving the right of way for Maryland Route 231 (80 feet wide) and running for a line of division across the tract called 'Hilltop Farm', shown on a plat prepared by D. H. Steffens, Maryland surveyor number 2048, dated April 14, 1961, the following course and distance,

\* \* \*

36.  North 03 degrees 40 minutes East 630.95 feet to the place of beginning. Containing 359.43 acres, more or less, and being a part of that tract called 'Hilltop Farm'.

\* \* \*

M. W. Munday, Assignee
for the Purpose of Foreclosure
P.O. Box 310
La Plata, Maryland 20646
934-9541

11/13/3t"

Included within the advertisement was a metes and bounds description of the property that contained a total of thirty-six (36) separate calls, three of which we have quoted above. The notice also made reference to the fact that the acreage to be sold was part of Hilltop Farm. Patently, the advertisement placed anyone of ordinary intelligence upon notice of what property was to be sold, where it was situate, and where one could obtain more detailed information. *Preske v. Carroll, supra.* Had a person read the notice, he would have discovered, without any difficulty, not only that the property was, as we have said, a part of Hilltop Farm, but that it bordered on Hughesville-Benedict, State Route 231. Furthermore, he could, if he so desired, have referred to the mortgage for additional information or he could have made contact with the assignee.[4] We think the assignee, in this case, did all that he was required to do, under the decisions of the Court of Appeals, and that Judge Mitchell correctly rejected Garland's argument to the contrary.

We agree with Garland, however, that a twenty-five thousand dollar ($25,000.00) sales price at a foreclosure sale, for a parcel of land that two (2) years before had sold for three hundred fifty-nine thousand, four hundred thirty dollars ($359,430.00) is "so insignificant as to shock the conscience of the Court," *Suburban Garden Farm Homes Corp. v. Duckett,* 179 Md. 648, 22 A. 2d 467 (1941).

The Court of Appeals in *Johnson v. Dorsey,* 7 Gill. 269, 294 (1848), said:

> ". . . [I]nadequacy of price is to be regarded as a strong auxiliary argument, in combination with circumstances calculated to cast doubt or suspicion upon the correctness of a sale. But standing alone, . . . it is insufficient to authorize an interference with the sale, unless, . . . it is so inordinate, as to indicate some mistake or unfairness in the sale, for

---

4. The mortgage contained no "being clause", but a purchase money mortgage is ordinarily recorded immediately after the deed from the seller to the buyer-mortgagor.

> which the purchaser is responsible, or misconduct
> or fraud in the trustee, to whom the management
> of the sale has been committed."

See *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 5 A. 2d 830 (1939); *Stallings v. Annapolis Sav. Institution*, 167 Md. 4, 172 A. 283 (1934); *Wagner v. Cohen*, 6 Gill. 97 (1847).

At the hearing on the exceptions Garland testified that he thought that, as of the date of sale, "the property would be worth twelve hundred dollars [($1,200.00)] an acre as a fair and reasonable price." We are not informed whether Garland's "fair and reasonable price" looked to a forced sale at public auction or a privately negotiated sale, nor need we, in this case, be concerned with the difference as the trial judge was not required to believe Garland's appraisal. We view the twenty-five thousand dollar ($25,000.00) sales price in the instant case as so inordinate that it gives rise to an inference of "some mistake or unfairness in the sale, for which the purchaser is responsible. . . ." If the facts in this case ended here we would have no hesitation in reversing the trial court and remanding the matter with instructions that the circuit court order a new sale. The facts of this case, however, do not end with the inadequate sales price and, because of the additional significant facts hereinafter discussed, we shall affirm the judgment of the circuit court.

The additional facts which lead us to that conclusion are that at the time of the hearing on the exceptions, Hill, through the assignee, offered to waive his right to any deficiency judgment against Garland. Before the order denying the exceptions and ratifying the sale was filed by Judge Mitchell, Hill placed in the proceeding a "Waiver of Deficiency" in which he waived his "right to a deficiency judgment against Thomas A. Garland, Trustee."

Hill argues that the net effect of his waiver is that the "real consideration" or sales price is not twenty-five thousand dollars ($25,000.00), the auction sales price, but that sum added to the dollar value of the waiver. Garland, on the other hand, asserts that the "real price" was twenty-five thousand dollars ($25,000.00), and that the

chancellor impermissibly "escalated the price . . . to more than $300,000.00." On oral argument it was conceded by Garland that if Hill had bid the same amount as Hill waived, disregarding objections relative to costs of the sale, Garland would have no sound basis for objecting to the sales price on the ground that it is inadequate.

As we see it the waiver of deficiency judgment actually raised the "real" purchase price to equal the total amount due, including interest, from Garland to Hill, plus the costs of the foreclosure.

A mortgagee, in Maryland, has the right to secure a judgment against a mortgagor for any deficiency between the amount received at a foreclosure sale and the amount of the mortgage, interest, and the costs of foreclosure. If one has knowledge that the foreclosure sales price will result in a deficiency, that fact, generally, is a motivating factor for a post-sale challenge over adequacy of price. Although Maryland does not appear to have decided heretofore whether a mortgagee's waiver of deficiency will elevate an otherwise inadequate purchase price to the level of adequacy, some other jurisdictions have ruled on the issue. The Court of Appeals for the Sixth Circuit, in *Equitable Life Assur. Soc. v. Vaughn*, 82 F. 2d 978, 981 (6th Cir. 1936) held:

> ". . . [I]n Tennessee . . . where a mortgagee has purchased mortgaged property for less than the mortgage debt, but afterwards releases its claims to a deficiency judgment, the effect is the same as if the full mortgage debt had been bid."

*See Erwin National Bank v. Riddle*, 18 Tenn. App. 561, 79 S.W.2d 1032 (1934).[5]

---

5. The Rhode Island appellate court in Island Savings Bank v. Galvin, 20 R. I. 158, 37 A. 809 (1897) considered the matter from a different angle. The court held that where the mortgagee knowingly permits a property to be sold at foreclosure for less than its fair market value, so that his representative may purchase at a lower price, the mortgagee is equitably estopped from obtaining a deficiency judgment or decree against the mortgagor.

If Hill had bid a sum equal to the total amount of Garland's indebtedness to Hill, plus costs, we fail to see how Garland could be heard successfully to complain that the price was inadequate. Yet, Hill's waiver of deficiency amounts, in cold dollars and cents, to exactly the same thing as if Hill had made such a bid at the auction. We think the reasoning of the court in *Equitable Life Assur. Soc. v. Vaughn, supra,* to be not only legally sound, but a common sense solution to the problem. Accordingly, we hold that when a mortgagee purchases at a foreclosure sale the property upon which he holds the mortgage, for an amount less than the mortgage debt and costs, and the mortgagee thereafter waives any claim to a deficiency judgment, the effect of the waiver is the same as if the bid had been for the full amount of the mortgage debt and costs.

In an oral opinion given at the conclusion of the evidence at the hearing on the exceptions, Judge Mitchell said:

> "Courts of equity do not let properties be sold in a mortgage foreclosure for a grossly inadequate price and let the mortgagee claim a deficiency judgment, it is innately inequitable and unjust, but here we don't have that situation.
>
> We have an offer to waive any deficiency, which in effect gives the mortgagor credit for some, for the full amount of the balance on the mortgage that was over $300,000.00 and also imposes upon the purchaser the duty of paying some additional charges, taxes and so forth, that were due at the time of the sale.
>
> So I think we have to really consider the overall amount for which the mortgagor is getting credit as the actual sale price in this case.
>
> In doing that, we do not find that over $300,000.00 for this property shocks the conscience of the Court."

For the reasons that we have heretofore set forth, we agree.

Garland next avers that the procedure authorizing

advertising of a foreclosure sale prior to the docketing of the proceedings vitiates the sale. During the life of the mortgage, the sale thereon and the hearing in the circuit court, Maryland Rule W74 a 2 (a) provided, in pertinent part:

> "Before making a sale of mortgaged property, the person authorized to make such sale shall give notice of the time, place and terms thereof by advertisement in some newspaper published in the county where the mortgaged property, or some portion thereof is located, if there be one so published and, if not, in a newspaper having a substantial circulation in said county; provided, however, that in the City of Baltimore the notice shall be published in one or more of the daily newspapers published in said City. Such notice shall be given for the period of time specified below:
>
> (i) For the sale of real estate or chattels real — at least once in each week for three successive weeks, the first such publication to be not less than fifteen days prior to sale and the last such publication to be not more than one week prior to sale." [6]

The Rule, we note, commands that before a sale the property must be advertised, however, it does not specifically require that the advertising await the commencement, by docketing, of the foreclosure. *See* Rule W72 c and W71 d.[7] Apparently, because former Rule W74 a 2 (a) did not proscribe the advertising of property that was to be foreclosed before the actual filing of the foreclosure proceeding, there seem to have evolved within the State

---

6. The Rule was amended effective July 1, 1975. The amendment, *inter alia*, added an entirely new section known as W74 a 2 (a) Condition Precedent. "Notice of sale in an action to foreclose a mortgage shall not be advertised until the action has been instituted in accordance with . . ." Md. Rule W72 or W73.

7. Rule W72 c was also amended, effective July 1, 1975. The substance of former Rule W71 d is now found in Rule W73. The "transplant" of the substance of Rule W71 d to Rule W73 occurred July 1, 1975.

different interpretations of the Rule with respect to whether the foreclosure action had to be filed in court before the advertising commenced, or following the advertising,[8] so long as the sale did not occur prior to the docketing of the action and the filing of an approved bond. *See* Md. Rule W74 a 1. In the Seventh Judicial Circuit the erstwhile practice was to allow advertising prior to the docketing of a case. We observe that a number of cases involving mortgage foreclosures have gone to the Court of Appeals from the Seventh Judicial Circuit,[9] and not one of them discussed the propriety, *vel non*, of advertising before docketing.[10]

In one case, however, *Hardy v. Gibson*, 213 Md. 493, 133 A.2d 401 (1957) the Court, speaking through the late Chief Judge Brune, recognized and implicitly sanctioned the practice employed in the Seventh Circuit, and perhaps elsewhere, when he pointed out, 213 Md. at 500:

> "The property was sold on June 27, 1956, pursuant to an advertisement in a Prince George's County newspaper published for the first time on May 31, 1956. On June 22, 1956, the Trustees docketed this suit in the Circuit Court for Prince George's County and filed their bond before the sale."

A reading of the above quoted paragraph makes it

---

8. The effect of such a practice, it seems, was to save the mortgagor money. If the mortgagor prior to the filing of the foreclosure in the court, but after notice of advertising, could arrange to pay off the mortgage, or refinance or come to some mutually satisfactory terms with the mortgagee, the sale could be cancelled with a minimum of additional cost to the mortgagor.

9. The Seventh Judicial Circuit is comprised of Prince George's County, Charles County, Calvert County, and St. Mary's County, Maryland.

10. *See* Tolzman v. Gwynn, 267 Md. 96, 296 A. 2d 594 (1972); Gaspin v. Browning, 265 Md. 552, 290 A. 2d 507 (1972); Smith v. Digges, 261 Md. 130, 274 A. 2d 92 (1971); Southern Md. Oil, Inc. v. Kaminetz, 260 Md. 443, 272 A. 2d 641 (1971); Hohensee v. Minear, 259 Md. 603, 270 A. 2d 776 (1970); Habib v. Mitchell, 257 Md. 29, 261 A. 2d 744 (1970); Waring v. Guy, 248 Md. 544, 237 A. 2d 763 (1968); Butler v. Daum, 245 Md. 447, 226 A. 2d 261 (1967); Hardy v. Gibson, *supra*; Suburban Garden Farm Homes Corp. v. Duckett, *supra*; Shaw v. Smith, 107 Md. 523, 69 A. 116 (1908).

manifest that the Court was well aware that the property in that case was advertised twenty-two days before the suit was docketed. We glean from *Hardy v. Gibson, supra,* that the Court not only knew of the custom that had arisen in the Seventh Judicial Circuit relative to advertising before docketing, but, as we have previously stated, implicitly approved the practice. To underscore our belief that such a practice as that prevailing in the Seventh Judicial Circuit was both recognized and sanctioned by the Court of Appeals, we note that on June 16, 1975, effective July 1, 1975, the Court altered Md. Rule W74 by adding thereto a new section known as W74 a 2 (a) and which mandates that, henceforth, no sale shall be advertised before an action is instituted.[11] If the prior rule did not authorize "pre-foreclosure sale advertising", there would have been no need to modify the rule so as to forbid such advertising. Prior to July 1, 1975, however, it was permissible to advertise a foreclosure sale prior to the filing of the foreclosure suit in the circuit court, and thus, no error is present in this case.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

11. For the substance of the rule *see* note 6, *supra.*