ROGERS, Associate Judge:
 

 Appellant appeals the dismissal of his suit for specific performance of a contract to sell real property. He contends principally that the trial court erred in holding that because appellees publicly advertised
 
 *1319
 
 that [adjustment of taxes and water rents made as of a date of [foreclosure] sale,” they were not required, under D.C. Code § 5-513 (1981), to convey the property free of special assessments. We affirm.
 

 I
 

 This appeal is before us on an approved statement of proceedings and evidence. D.C.App.R. 10(j). Appellant alleged in the complaint that he had purchased the lot located at 2630 Adams Mill Road, N.W. at a foreclosure sale on May 3, 1982, which was conducted by appellee American Security Bank as trustee for the noteholder, appel-lee National Permanent Federal. The property was advertised in December 1981 for foreclosure sale by public auction, which was held on January 7,1982. Appellant bid between $250,000 and $270,000 and a Mr. Kaiser bid $278,500. When Mr. Kaiser failed to comply with the terms of the sale, the property was readvertised. The terms of sale as set forth in the advertisement for the May 3, 1982 auction provided:
 

 Adjustment of taxes and water rents made as of date of sale. All conveyancing, recording, recordation tax, etc. at cost of purchaser. Terms of sale to be complied with within thirty days from date of sale, otherwise Trustee reserves the right to forfeit deposit....
 

 Appellant was the only bidder at the May 3,1982 public auction; he bid $40,000. Following the auction, appellant posted the required $10,000 deposit and proceeded to the Office of Recorder of Deeds to check on taxes and to conduct a title search of the property. He discovered that numerous Certificates of Delinquent Costs for Correction of Wrongful Conditions on the property, D.C.Code § 5-513, were pending. When he contacted appellees, he was advised that appellees would not adjust the assessments at the closing on the sale. Appellant thereupon asserted that appel-lees owed him $125,000 in tax adjustments for the assessments, and that he was willing to set off the balance of the purchase against that amount.
 

 By letter of May 25,1982, appellee American Security Bank advised the title insurance company that appellant was prepared to settle and would contact it to arrange a settlement date before June 2, 1982, when the offer of sale expired; the bank requested that a trustee’s deed be prepared. Appellant testified that this letter was not a promise to him that the property would be conveyed free and clear of the special assessment liens, and that when he contacted an employee of the title company, Mr. Ro-senthal, to arrange a settlement date, he was advised a title insurance policy would not be issued insuring against the special assessments unless they were paid at the time of settlement. Mr. Rosenthal testified that he did not recall arranging a settlement date with appellant, and that it was not within his authority as title officer to do so; the title company would first have to issue a binder for a title insurance policy and none had been requested. Meanwhile, the thirty days within which the sale was to be completed had expired. Appellant never attended settlement on the property or tendered any money to the closing agent, District Realty Title Insurance Company.
 

 Evidence was also offered that appellant lives near the property at issue and was generally familiar with it. He owns five other pieces of real property for investment purposes, one of which he acquired through a foreclosure sale. He also has participated in foreclosure auctions for approximately ten years, at the rate of three or four sales a year, and often attends without any plan for financing or otherwise funding the purchase price if he is the highest bidder, being willing to forfeit his deposit, if financing is unavailable. Although appellant read the advertisement of sale on or about April 25, 1982, he made no effort to obtain financing for the property before the May 3, 1982 auction and was willing to forfeit his deposit; he did the
 
 *1320
 
 same thing when he bid on the property at the first auction. Nor had he made a title search or any check of the outstanding taxes on the property prior to May 3, 1982.
 

 The trial court held that special assessments in the form of Certificates of Delinquent Costs for Correction of Wrongful Conditions, D.C.Code § 5-513 (1981),
 
 [1]
 
 were neither water rents nor taxes within the meaning of the disputed advertisement of sale; the court held that the term “taxes” in § 5-513 was intended only to characterize the manner and method of collecting the special assessment and was not disposi-tive of their status for the purposes of adjusting such assessments between parties to a foreclosure sale. The court opined that the most obvious meaning to attribute to “[ajdjustment of taxes” when used in an advertisement for a foreclosure sale “is ordinary real estate taxes that are assessed against real property and provide the primary source of funding for local governments.” The court concluded, “Because all real property is subject to general real estate taxes, it is reasonable to assume that real property sold at a foreclosure sale will be subject to such taxes, and that a public notice that taxes will be adjusted as of the date of sale binds the seller to adjust such taxes.” The court contrasted ordinary real estate taxes and special assessments, the latter being against a particular parcel of property “for a special service
 
 rendered to that parcel
 
 by the government — in this case the District of Columbia’s delivery of fuel oil and repair of conditions which had led to Housing Code violations.” (emphasis in original). The court further concluded, “There is no basis upon which to presume that either a seller or a buyer of real estate would construe such assessments as ‘taxes’ to be ‘adjusted.’ ”
 

 In reaching its decision, the trial court credited the testimony of Mr. Rosenthal, a title officer since 1969 and a title abstractor prior to that time, concerning liens for the correction of wrongful condition assessments. Mr. Rosenthal testified that customarily liens resulting from such assessments are not treated as real estate taxes in connection with settlement adjustments, but rather as prior liens in the nature of mechanics’ liens which a purchaser takes “subject to” or satisfies. Mr. Rosenthal explained that ordinarily real estate taxes are not title matters of record, while the special assessment liens are of record which are identified separately on a title report and therefore are afforded different treatment. Of the many trustee’s deeds which he has prepared, none contained any warranty of title, but were in the nature of a quit-claim deed whereby the grantor conveyed only that title which he may have had in real property.
 

 II
 

 Courts have long recognized a broad and clear distinction between special assessments and general taxes.
 
 [2]
 
 In
 
 District of Columbia v. Sisters of the Visitation, su
 
 
 *1321
 

 pra
 
 note 2, 15 App.D.C. at 306, the court held that “assessments” cannot be regarded as a mere synonym for “taxes,” noting that its view was based on the common usage in the District of Columbia as well as congressional legislation enacted for the District of Columbia. The court construed “taxes” as referred to “all those regular impositions or burdens laid by government upon property and persons for the purpose of raising revenue for its general needs,” in contrast to “special assessments,” which, “means the cost or expense of some particular local improvement ... that shall have been authorized by the legislature and declared and established as a special benefit to the adjacent premises of a private owner, ... as the term is most commonly used in modern legislation.”
 
 Id.
 
 at 306.
 
 [3]
 

 (See Illinois Central Railroad Co. v. Decatur, supra,
 
 147 U.S. at 197-98, 13 S.Ct. at 294 (distinguishing “special taxes” and “general assessments”);
 
 Evans v. Ockershausen, supra,
 
 69 App.D.C. at 298, 100 F.2d at 708).
 

 Appellant contends, however, that the plain language of D.C.Code § 5-513 is dis-positive of the status of a special assessment as a tax. He also relies on various “Special Assessment/Tax Ledgers” which are maintained by the District Government, and notes that the case chiefly relied upon by the trial court,
 
 Illinois Central Railroad Co. v. City of Decatur, supra,
 
 provides that both general taxes and special assessments are properly called taxes. Therefore, he argues, since special assessments are taxes under § 5-513, they are taxes that a prospective purchaser can reasonably expect to be included in a foreclosure advertisement that: “Adjustment of taxes ... made as of the date of sale.”
 
 [4]
 
 He distinguishes cases which distinguish between general taxes and special assessments on the ground that such distinctions are irrelevant in the context of a foreclosure sale because an advertisement promising “Adjustment of taxes ... made as of date of sale” tells the reader, not about the kind of tax, but whether if unpaid, the “hapless bidder at the foreclosure sale” can lose his title. Finally, he asserts this has been the way in which prospective purchasers have traditionally looked at the term “adjustment of taxes.”
 

 Assessments made by the District Government pursuant to § 5-513 are clearly designed to maintain a particular property and to reimburse the District Government for expenditures in maintaining the property; they are not for the purpose of
 
 *1322
 
 raising revenue. Words in a statute are to be construed according to “their ordinary-sense and with the meaning commonly attributed to them.”
 
 Peoples Drug Stores, Inc. v. District of Columbia,
 
 470 A.2d 751, 753 (D.C.1983) (citations omitted). Thus the distinction, long recognized in this jurisdiction and elsewhere, between “taxes” and “special assessments” is applicable to § 5-513 assessments. Of course, statutory references and definitions do not necessarily control the meaning of terms between private parties.
 
 Della Ratta, Inc. v. American Better Community Developers, Inc.,
 
 38 Md.App. 119, 128, 380 A.2d 627, 634 (1977). But on the record in the instant case, as appellees suggest, it seems unreasonable to assume or infer that the trustees intended by their advertisement to pay prior liens which appellant contends are more than four times greater than his bid price,
 
 [5]
 
 and more reasonable to adhere to the principle that a purchaser at a foreclosure sale is presumed to make allowances for outstanding encumbrances in making his bid.
 
 See Horne v. Smith,
 
 368 So.2d 392, 394 (Fla.1979). Appellant offered only his own testimony regarding his version of the usual practice in real estate settlements. We are unpersuaded that the trial court erred in failing to accord greater weight to his testimony than to that of an experienced title officer and title abstractor.
 
 See Washington v. District of Columbia,
 
 429 A.2d 1362, 1369-70 & n. 23 (D.C.1981) (en banc) (credibility determinations are for the trier of fact).
 

 The general rule is that a foreclosure purchaser takes a property subject to prior liens and interests accruing prior to consummation of the sale.
 
 See Patron v. American National Bank of Jacksonville,
 
 382 So.2d 156, 158 (Fla.1980); 55 Am.Jur.2d
 
 Mortgages
 
 § 780 (1971); 3A R. Powell, The Law of Real PROPERTY, ¶ 466 at 696.-64(4) (1984) (deed given without warranty). The recording of the assessments operates as constructive notice to all purchasers.
 
 Ivrey v. Karr,
 
 182 Md. 463, 473, 34 A.2d 847, 852 (1943). Moreover, a trustee generally has no obligation to disclose liens or interests which the purchaser could have discovered by his own investigation.
 
 Id.
 
 at 852 (quoting
 
 Wicks v. Wescott,
 
 59 Md. 270, 277 (1883)). Prior liens are not affected by a foreclosure sale and are normally not payable out of the proceeds of such sale.
 
 Gunton v. Zantzinger,
 
 3 MacArthur (10 D.C.) 262, 264-65 (1879);
 
 Baltimore Federal Savings & Loan Association v. Eareckson,
 
 221 Md. 527, 528-31, 158 A.2d 121, 123-24 (1960) (prior first mortgage). In other words, the doctrine of
 
 caveat emptor
 
 applies to foreclosure sales because a trustee makes no warranty of title and is generally subject to no duty to investigate or describe outstanding liens or encumbrances.
 
 See Ivrey v. Karr, supra,
 
 182 Md. at 473, 34 A.2d at 852;
 
 Feldman v. Rucker,
 
 201 Va. 11, 19-21, 109 S.E.2d 379, 385-86 (1959); G. Bogert & G. Bogert, The Law of Trust & Trustees, § 745 at 487 (rev. 2d ed. 1982). The purchaser must therefore make his own investigation and determine what liens or encumbrances may exist against the property prior to turning over his deposit.
 
 Cf. Garland v. Hill,
 
 28 Md.App. 622, 624, 346 A.2d 711, 713 (1975) (notice for purpose of allowing further investigation by interested person),
 
 aff'd,
 
 277 Md. 710, 357 A.2d 374 (1976).
 

 In the instant case appellant discovered the § 5-513 assessments in the Office of the Recorder of Deeds.
 
 [6]
 
 The disputed advertisement was thus sufficient to enable a prospective purchaser, “by the exercise of ordinary intelligence, to locate the property and to obtain more detailed information concerning it.”
 
 Garland v. Hill, supra,
 
 
 *1323
 
 346 A.2d at 713 (quoting
 
 Preske v. Carroll,
 
 178 Md. 543, 547, 16 A.2d 291, 293 (1940) (other citations omitted). Appellant was knowledgeable about the process of foreclosures and the disputed property, and by going to the Recorder’s office, he demonstrated he knew where to find information pertinent to the property. That he failed to obtain the information before the foreclosure sale is no one’s fault except his own.
 

 Appellant also argues that reversal is required because the trial court’s dismissal was contrary to the admissions in the record and the deed of trust which specified that the trustee would pay all assessments and taxes. The terms of the deed of trust set forth, as between the mortgagee, the mortgagor and the trustee, the priority for disbursing sale proceeds. Appellant, a stranger to the deed of trust, cannot sue to enforce it or to recover damages.
 
 Marranzano v. Riggs National Bank of Washington, D. C.,
 
 87 U.S.App.D.C. 195, 196, 184 F.2d 349, 350 (1950) (stranger to a contract cannot sue to enforce its terms or to recover damages for violation);
 
 cf. National Life Insurance Co. v. Silverman,
 
 147 U.S. App. 56, 72, 454 F.2d 899, 915 (1971) (in nonjudicial sale, terms of deed of trust regarding foreclosure measure powers of trustee to proceed).
 

 Finally, appellant claims that he is entitled to specific performance. We disagree. Not only has he failed to show that his remedies at law are inadequate,
 
 [7]
 
 but his proposal that he pay $40,000 in exchange for $130,000 in outstanding liens is, on its face, unfair and unconscionable. In addition, the parties never resolved the issue of payment of the special assessments, and appellant never tendered performance. Therefore, he is not in a position to enforce the contract.
 
 See Clayman v. Goodman Properties, Inc.,
 
 171 U.S.App. D.C. 88, 96-97, 518 F.2d 1026, 1034-35 (1973). Accordingly, requirements for the equitable remedy of specific performance are absent.
 
 Flack v. Laster,
 
 417 A.2d 393, 400 (D.C.1980) (quoting 4 J.N. Pomeroy, A Treatise on Equity Jurisprudence, § 1404 (5th ed. 1941)); Bogert,
 
 supra,
 
 § 746 at 495. Contrary to appellant’s contention that his failure to make physical delivery of the balance due of the purchase price to the trustee is excused because appellees breached their contract with him when they told him that no portion of the proceeds of sale would be applied to the payment of the assessment, we find no evidence of repudiation to entitle appellant to suspend performance.
 
 Cooper v. Cooper,
 
 35 A.2d 921, 924 (D.C.1944) (mere dispute as to manner of performance not repudiation).
 

 Accordingly, we find no error by the trial court in construing D.C.Code § 5-513 and the advertisement for the May 23 foreclosure sale. Since appellant refused to accept a deed subject to the assessments, a contract for the sale of the property was not concluded, and hence he is not entitled to an order directing conveyance of the property.
 
 [8]
 

 Affirmed.
 

 [1]
 

 . D.C.Code § 5-513(a) (1981) reads in pertinent part:
 

 Whenever the owner of any real property in the District of Columbia shall fail or refuse ... to correct any condition which exists on ... such property in violation of law, ... the Mayor ... is authorized to: Cause such condition to be corrected; assess the cost of correcting such condition and all expenses incident thereto (including the cost of publication, if any, herein provided for) as a tax against the property on which such condition existed ...; and carry such tax on the regular tax rolls of the District, and collect such tax in the same manner as general taxes in said District are collected....
 

 [2]
 

 .
 
 Illinois Central R.R. Co. v. Decatur,
 
 147 U.S. 190, 197-200, 13 S.Ct. 293, 294, 37 L.Ed. 132 (1893);
 
 Board of Directors of Red River Levee Dist. No. 1 v. Reconstruction Fin. Corp.,
 
 170 F.2d 430, 433 (8th Cir.1948);
 
 Evans v. Ockershausen,
 
 69 U.S.App.D.C. 285, 298, 100 F.2d 695, 708 (1938),
 
 cert. denied,
 
 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034 (1939);
 
 City of Fresno v. Malmstrom,
 
 94 Cal.App.3d 974, 983-84, 156 Cal.Rptr. 777, 782-83 (1979);
 
 District of Columbia v. Sisters of the Visitation,
 
 15 App.D.C. 300, 306 (1899);
 
 Wikman v. City of Novi,
 
 413 Mich. 617,
 
 *1321
 
 633-35, 322 N.W.2d 103, 108-09 (1982);
 
 see generally
 
 Annot. 90 A.L.R. 1137, 1138 (1934).
 

 [3]
 

 . In
 
 District of Columbia v. Sisters of Visitation, supra,
 
 15 App.D.C. at 306, the court stated:
 

 The word "taxes," in its ordinary sense, embraces all those regular impositions or burdens laid by government upon property and persons for the purpose of raising revenue for its general needs.
 

 The term “assessments" has two different and well known significations, both in common speech and legal language. In one sense, it means, as contended by appellant, the act of appraisement, of the valuation of property, and its entry upon the tax lists for the regular collection of its ascertained proportion of the tax levy.
 

 In another, it means the cost or expense of some particular local improvement, for example, a new street, a sidewalk, a sewer, and the like, that shall have been authorized by the legislature and declared and established as a special benefit to the adjacent premises of a private owner.
 

 This latter signification would seem to be that with which the term has been most commonly used in modern legislation.
 
 Emery v. Gas Co.,
 
 28 Cal. 345, 346.
 

 It certainly has this meaning in common speech in the District of Columbia, and is a use derived from the frequent legislation of Congress providing for works of local improvement therein, and the constantly resulting litigation.
 

 ******
 

 [4]
 

 . He contends the trial court’s conclusion that it is no more sensible to construe such special assessments as taxes than it would be to construe utility or repair hens as taxes is unpersuasive since no statute defines private utility and repair hens as taxes.
 

 [5]
 

 . The trial court found there was no evidence presented at trial to support appellant’s assertion that taxes and assessments exceeded $130,-000. (R. 66).
 

 [6]
 

 . Section 5-513 liens must be recorded. D.C. Code §§ 45 — 909(a)(l 1) and (c)(3) (1981).
 

 [7]
 

 .
 
 See National Life Ins. Co. v. Silverman, supra,
 
 147 U.S.App.D.C. at 74-75, 454 F.2d at 917-18 (per curiam upon reconsideration en banc) (remedy for wrongful foreclosure is damages or equity).
 

 [8]
 

 . Appellant also asks this court to allow him to amend his complaint to request money damages. Since he had the opportunity under the pretrial order of October 21, 1983 to amend his
 
 ad danum
 
 clause and he did not do so, or raise the issue at trial, he may not seek to do so by appeal.
 
 Miller v. Avirom,
 
 127 U.S.App.D.C. 367, 370, 384 F.2d 319, 322 (1967);
 
 Gillespie v. Washington,
 
 395 A.2d 18, 21 (D.C.1978).